Dorsey v. McGee.

after the rendition of the judgment, the district court did not err in dismissing the appeal. The judgment is

AFFIRMED.

THE other judges concur.

| | |
|---|---|
| 30 | 657 |
| 31 | 149 |
| 30 | 657 |
| 33 | 93 |
| 30 | 657 |
| 34 | 676 |
| 30 | 657 |
| 41 | 251 |
| f41 | 522 |
| 41 | 660 |
| 30 | 657 |
| 52 | 293 |
| 52 | 422 |
| 53 | 481 |
| 53 | 514 |
| 55 | 17 |
| 30 | 657 |
| 56 | 641 |
| 30 | 657 |
| 60 | 796 |

## C. G. DORSEY ET AL. v. J. L. McGEE.

[FILED NOVEMBER 5, 1890.]

1. **Building Contract:** MODIFICATIONS: ACTION ON BOND: EVIDENCE. Specifications accompanying plans for a dwelling house provided for two coats of plastering; S. and W. contracted with M. to furnish all material and labor, and to build and construct a house according to such plans and specifications, with certain exceptions. In an action by M against the contractors, and D. and W., their sureties, on a bond by the contractors to M. for the due and faithful performance of the contract, the specifications were introduced in evidence by M., and it appearing that a change had been made in the specifications by which the requirement of *two* coats of plastering was made to read *three* coats of plastering, and two witnesses testifying that such change was made at the time of the signing of the contract, and two also that the change was made by M ten days subsequent to the execution of the contract, and without the knowledge or consent of the sureties of the contractors and the jury having found for the plaintiff, against the sureties as well as the contractors, upon error, *held*, that the specifications, as introduced in evidence, must be taken and considered as the original specifications under which the contract was executed.

2. ———: ———: ———. The plans and specifications referred to were drawn in view of a building fronting north and east. The locality of the building having been changed by M. to that of a southwest corner lot, the contractors had full knowledge and consented to the new location; the sureties afterwards signed the bond without knowledge either of the original design or of any change as to the location or frontage of the building. By direction of M. the contractors built the house fronting south and west. *Held*, Not to be such a change of plans, specifications, or contract as would release the sureties.

42

3. ———: ———: ———: The specifications contained a clause, that "It is understood that the owner of this building and the architect shall have the right and power to make any alterations, additions, or omissions of work or materials herein specified, or shown on the drawings, that they may find necessary, during the progress of the building, and the same shall be and hereby is made obligatory upon and must be acceded to by the contractor and carried into effect without in any way violating or vitiating the contract; and the value of all such alterations, additions, or omissions shall be in proportion to the cost of other similar work to be done under the contract." The evidence shows the construction of a stairway from the kitchen to a bedroom to be one not specified, as well as the use of bronze hardware in the place of No. 1 hardware specified, and a change in the location of the cistern. *Held,* that this addition and these changes were provided for in the clause set forth.

4. **The findings of fact** and the judgment must conform to and be supported by the allegations of the pleadings on which they are based. (*Lipp v. Horbach,* 12 Neb., 371; *Kitchen Bros. v. Hammond, ante,* 618.)

5. **Instructions** to a jury must be based upon and applicable to the pleadings and evidence. (*Herron v. Cole Bros.,* 25 Neb., 692; *Runge v. Brown,* 23 Neb., 817.)

6. **Evidence:** Records. A person not a stranger to a judicial proceeding is bound thereby, and the record of such proceeding is admissible in evidence against him. (1 Greenleaf [14th Ed.], sec. 522.)

7. **A motion for a new trial** is indivisible, and when made jointly by two or more parties, if it cannot be allowed as to all, must be overruled as to all. (*Dutcher v. State,* 16 Neb., 30; *Long & Smith v. Clapp,* 15 Id., 417; *Real v. Hollister,* 17 Id., 661; *Boldt v. Budwig,* 19 Id., 739; *Dunn v. Gibson,* 9 Id., 513.)

Error to the district court for Gage county. Tried below before Broady, J.

*Hazlett & Bates,* for plaintiffs in error, cited, contending that the sureties were released by variations in the plans : *Miller v. Stewart,* 9 Wheat. [U. S.], 680; *Polak v. Everett,* L. R. 1 Q. B. D. [Eng.], 669 ; *U. S. v. Hillegas,* 3 Wash. C. C. [U. S.], 75; *Taylor v. Johnson,* 17 Ga. 521; *Grant v.*

*Smith,* 46 N. Y., 93; *Brigham v. Wentworth,* 11 Cush. [Mass.], 123; *St. Albans Bank v. Dillon,* 30 Vt., 122; *Zimmerman v. Judah,* 13 Ind., 286; *Judah v. Zimmerman,* 22 Id., 388; *Bacon v. Chesney,* 1 Stark. [Eng.], 192; *Dobbin v. Bradley,* 17 Wend. [N. Y.], 425; *Walrath v. Thompson,* 6 Hill [N. Y.], 540; *Fowler v. Brooks,* 13 N. H., 240; Brandt, Suretyship, secs. 338, 387; *Bethune v. Dozier,* 10 Ga., 235; *Rowan v. Mfg. Co.,* 33 Conn., 1; Chitty, Contracts [11th Ed.], 776, 777; *Ind. Dist. of Mason City v. Reichard,* 50 Ia., 99; *Cunningham v. Wrenn,* 23 Ill., 64; *Simonson v. Grant,* 36 Minn., 439; DeColyar, Guaranties, P. & S., 389; Id., 394-95, 96, and cases cited: *Leeds v. Dunn,* 10 N. Y., 469; *Gardiner v. Harback,* 21 Ill., 129; *Barker v. Scudder,* 56 Mo., 272; *Whitcher v. Hall,* 5 B. & C. [Eng.], 269; Theobold, Prin. & Sur., 119; *Weir Plow Co. v. Walmsley,* 11 N. E. Rep., 232, and cases cited in note; *Lucas Co. v. Roberts,* 49 Ia., 159; *Taylor v. Jeter,* 23 Mo., 244. Also by changes in regard to terms of payment: *Gen'l Steam Nav. Co. v. Rolt,* 6 C. B. [Eng.], 550; *Calvert v. London Dock Co.,* 2 Keene [Eng.], 638; *Bragg v. Shain,* 49 Cal., 131; *Bacon v. Chesney,* 1 Stark. [Eng.], 152; *Benjamin v. Hillard,* 23 How. [U. S.], 149; Brandt Suretyship, sec. 345, and cases cited: *Farmers Bank v. Evans,* 4 Barb. [N. Y.], 490; *Birkhead v. Brown,* 5 Hill [N. Y.], 634. As to the sufficiency of the answer: *Burr v. Boyer,* 2 Neb., 267; *Rathburn v. R. Co.,* 16 Id., 443; *Herdman v. Marshall,* 17 Id., 257; *Olcott v. Carroll,* 39 N. Y., 436; *Humphries v. Spafford,* 14 Neb., 488; *Mills v. Miller,* 3 Id., 95; *Wilson v. Macklin,* 7 Id., 50; *Catron v. Shepherd,* 8 Id., 318; *Singer Mfg. Co. v. Doggett,* 16 Id., 611; *Evarts v. Smucker,* 19 Id., 43; *Brown v. Rogers,* 20 Id., 548; *Klosterman v. Olcott,* 25 Id., 382; *Homan v. Steele,* 18 Id., 659; *Hale v. Wigton,* 20 Id., 83; *Curtis v. Cutler,* 7 Id., 317. As to the instructions: *Simonson v. Thori,* 31 N. W. Rep., 861; *Bacon v. Chesney, supra.*

*Pemberton & Bush, contra,* cited, as to variation of plans and terms of payment: *Irwin v. Opp,* 3 N. E. Rep. [Ind.], 650; Lloyd, Buildings, sec. 54; *Strawbridge v. R. Co.,* 74 Am. Dec., 545, and note; *Hanauer v. Gray,* 99 Id., 226, and note; *McKecknie v. Ward,* 17 Am. Rep., 281; *Benjamin v. Hillard,* 23 How. [U. S.], 165, 166; Brandt, Suretyship and Guaranty, 467. As to the pleadings: *Curtis v. Cutler,* 7 Neb., 317. As to the instructions: *Russell v. Rosenbaum,* 24 Neb., 769, 772; *Weir v. R. Co.,* 19 Id., 212; *Smith v. Brady,* 72 Am. Dec., 442.

COBB, CH. J.

This action was brought in the district court of Gage county by the defendant in error against Sweet & Wilson, as principals, and the plaintiffs in error, as sureties, on a bond given for the faithful performance of a certain contract for the erection of a dwelling house and barn in the city of Beatrice, entered into between J. L. McGee and Sweet & Wilson, who were contractors and builders, at Beatrice, as follows:

"Know all men by these presents, that Messrs. Sweet & Wilson, of Beatrice, Nebraska, principals, and C. G. Dorsey and J. B. Weston, as sureties, are held and firmly bound unto J. L. McGee, of same residence, in the penal sum of two thousand dollars, lawful money of the United States, for the payment of which sum well and truly to be made, we hereby bind ourselves, our heirs, executors, and administrators, firmly by these presents.

"Signed by us and dated this 6th day of April, 1887.

"The condition of the above obligation is such, that whereas the above named Sweet & Wilson have been awarded the contract of building a frame residence and stable and furnishing all materials, situated in lot No. 7 and south half of lot No. 8, in block No. 20, in Fairview addition to the city of Beatrice, Nebraska, according to

the contract entered into this 29th day of March, 1887, between them and said J. L. McGee, and according to the plans and specifications accompanying said contract and referred to therein :

"Now if the said Sweet & Wilson shall perform their part of said contract with the true intent and meaning and conditions of the same, then the foregoing obligations shall be null and void, otherwise the same shall remain in full force and effect.

"Witness our hands this 6th day of April, 1887.

"(Signed)                    Sweet & Wilson.
                             "C. G. Dorsey.
                             "J. B. Weston."

The amended petition alleged a number of breaches of the condition of said bond, by reason of which plaintiff was damaged in the sum of $2,350, and asked judgment against Sweet & Wilson and C. G. Dorsey and J. B. Weston in the sum of $2,000.

To the amended petition, the plaintiffs in error, Dorsey and Weston, filed an answer admitting the execution of the bond as sureties, but allege as a defense thereto that after the execution and delivery of said bond the defendants Sweet & Wilson and the plaintiffs, without the knowledge or consent of these defendants, changed the contract plans and specifications referred to in said bond, in material parts thereof, and erected said buildings mentioned in said contract in a different manner than that mentioned and agreed to be built in said original contract, and changed the plans and specifications for the erection of said buildings from the original contract plans and specifications as referred to in said bond, all of which was done by plaintiff and defendants Sweet & Wilson after the execution and delivery of said bond, without the knowledge or consent of the defendants Dorsey and Weston.

To this answer a reply consisting of a general denial was filed by plaintiff. A trial was had by a jury, who

found in favor of plaintiff and against all of the defendants in the sum of $1,551.16.

Separate motions for a new trial were filed by the defendants Sweet & Wilson and the defendants Dorsey and Weston, which were overruled by the court and judgment rendered against the defendants Sweet & Wilson as principals and the defendants Dorsey and Weston as sureties, to reverse which ruling and judgment, and for a new trial, the defendants Dorsey and Weston prosecute a writ of error to this court.

Counsel for plaintiffs in error, in the brief, do not present the errors upon which they rely, in the order in which they are stated in the petition in error, nor is it easy, in all cases, in following the argument, to apply it to the specific error intended. But I will take up the points as they are presented in the brief, and as no point is argued which is not stated in the petition in error, with more or less accuracy, I will spend but little time in endeavoring to point out their special application.

The first point of the argument is directed to the insufficiency of the evidence to sustain the verdict and judgment. In support of this proposition evidence is cited from the bill of exceptions tending to prove that after the execution and delivery of the bond upon which the plaintiffs in error were sued, the plaintiff, and Sweet & Wilson, his contractors, changed the contract plans and specifications referred to, and mentioned in the bond, in material points, without the knowledge or consent of the sureties, plaintiffs in error, and thereby released them from the obligation of the said bond. The first alteration to which attention is called is in the specifications for the plastering, where the figure "3" was substituted for the figure "2," as fixing the number of coats of plastering for the building. The two defendants, C. A. Sweet and C. S. Wilson, testified that this alteration, which is plain and palpable upon the face of the specifications, was made by the plaintiff

some week or ten days after the execution and delivery of the bond by plaintiffs in error, while the plaintiff and his daughter, Miss Minnie McGee, testified that the alteration was made at the time of the execution of the contract be-tween the plaintiff and the defendants Sweet & Wilson; and as the verdict was for the plaintiff, we must, for the purposes of this review, consider the specifications as intro-duced in evidence, as the original specifications.

The next change in the plans and specifications to which attention is called is that the plans were drawn for a building facing north and east, and that by direc-tion of the plaintiff the house was actually built facing south and west. That this change was made is clearly shown by the evidence, but it does not appear that any change was made on the face of the plans or specifications, nor does it appear that any change in the drawings or written specifications was necessary for that purpose. The logic of the position of the plaintiffs in error on this point is, that whereas Sweet & Wilson entered into a contract with the plaintiff to build a certain house according to plans and specifications, drawn by Mendelssohn and Fisher, of Omaha, and the plaintiffs in error entered into a penal bond conditioned that they would build that identical house, and, by direction of the plaintiff, they did not build that identical house, plaintiffs in error were thereby released from the obligation of their bond, and cannot be held for the failure of said Sweet & Wilson to build another and different house. The turning point is, Did the con-templated building, by reason of the premises, lose its identity? This question must be answered in the negative.

The other changes complained of, are, "An extra flight of stairs from kitchen to bedroom; inside finish of house was changed from white pine to yellow pine finish; change from No. 1 hardware to solid bronze hardware, and change of location of cistern." The first was not a change merely, but an "addition," and as such is amply provided for in

the first clause of the specifications.    It was, moreover, the purpose and object of this clause of the specifications to provide for alterations and omissions in the work of the construction and finishing of the building.    Doubtless this clause of the specifications was designed to meet and obviate the hardship of the decisions releasing sureties on account of small changes and alterations in the plans and specifications of buildings and other works.    To give the language of the provision that effect when used in instruments such as that we are now considering, will work no injustice, but, on the contrary, conduce to a fair and equitable administration of justice.    A careful examination of the specifications fails to show that they call for an inside finish of *white* pine, so that it reqires no change to make the finish of *yellow southern* pine, but simply an addition; and so also of bronze hardware.

We now come to the consideration of the matter of payments.    The contract between the plaintiff and Sweet & Wilson provides for the payment by the former to the said contractors for the materials and work contracted for, of $300 for the barn when the same should be completed and finished; for the house, when the foundation is in and the frame erected, $1,000; when ready for plastering, $1,000; when finished woodwork is on, $1,000, and $500 when contract is completed and accepted by owner.    The contract provided that the said house should be completed and finished by July 1, 1887, and the barn to be finished by April 15, 1887.

At the trial, upon his cross-examination as a witness, sworn and examined on his own behalf, the plaintiff testified that the first payment he made to Sweet & Wilson was $300, April 16, 1887; that he also paid them $15, April 25; $700, May 7; $300, May 16; $1,000, May 29; $35, May 29; $22, June 18; $295, June 18; $3, at the same date, and on the same date, $500; June 25, $300; $7.40 about the same date.    He also testified that the barn

was completed and finished about the 1st of July; that it was not completed on the 16th day of April ; that he paid the $300 at that date because Mr. Sweet claimed he needed the money and asked it as a favor, and that he did not consult the plaintiffs in error in regard to changing the times of payment to the contractors.    Thereupon counsel for the defendants (plaintiffs in error) asked the witness the following question : Q. Don't you know when the foundation of the house was put in and the frame erected? To which question the plaintiff objected, as irrelevant and and not proper cross-examination, which objection was sustained.

C. S. Wilson, one of the contractors, sworn as a witness on the part of the defendants, testified that the foundation was put in and the frame-work erected for the house about May the 1st, according to his recollection.    He was asked the following question, by counsel for defendants : Q. When was the second money you received from McGee on this contract?    Which question was objected to by plaintiff, and the objection sustained ; no ground of objection was stated.

This witness had previously testified as follows : .

Q. When was this barn completed?

A. Along about—the barn was completed as well as I can recollect shortly after ——.    We had received the three hundred dollars a little before the barn was completed.

Q. When did you receive the three hundred dollars?

A. April 16.

Q. The barn was not completed entirely till about the 21st, was it?    (Objected to, as leading; sustained.)

Q. When was the barn finished?    (Objected to, as irrelevant and immaterial, and as repetition ; sustained.)

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Q. When was the foundation completed and the frame-work erected for this house?    (Objected to, as irrelevant,

immaterial, and inadmissible under the pleadings, as far as the bondsmen are concerned; sustained.)

Q. When was the second money you received from Mr. McGee under this contract? (Objected to (no ground stated); sustained.)

BY THE COURT: This comes in as rebuttal testimony for Mr. McGee.

Q. BY MR. BATES: When was the foundation completed and the frame-work erected for this house? (Objected to, as irrelevant, immaterial, and inadmissible under the pleadings; overruled.)

A. About May the 1st, is my recollection.

It is to be regretted that the defendant Wilson was not allowed to testify fully as to the times when the barn was finished and when the foundation of the house was completed and the frame-work erected for the house; also, when the payment for the barn and the first payment of $1,000 on the house were made. As the evidence stands, it is proven that the first payment under the contract, to-wit, the $300 for the barn, was made before the barn was finished, and hence before the money was due under the terms of the contract. No advantage could be taken of this fact by the contractors themselves, but I think that it is otherwise in so far as the plaintiffs in error are concerned. All of the cases cited, or all that I have been able to find, follow the principle of law as stated by Brandt in his work on Suretyship and Guaranty, sec. 345: "Any dealings with the principal by the creditor, which amount to a departure from the contract by which the surety is bound, and which by possibility might materially vary or enlarge the latter's liability without his consent, generally operate to discharge the surety." To apply this principle to the case at bar, the plaintiffs in error were bound to the performance by Sweet & Wilson of the entire contract, as well for the completion of the barn as for the completion of the house, and any act of McGee that would release them from

Dorsey v. McGee.

a part of their contract or binding obligation of the bond, would release them from the whole. While the payment of the $300 for the barn remained in prospect, it was an inducement and stimulant to Sweet & Wilson to keep their contract inviolate and complete the barn according to its terms. It was the right of the plaintiffs in error that this stimulant and inducement should not be removed by the act of McGee, and their removal by him without their consent or approval before the completion of the barn released them from the obligation of the bond so far as it bound them for its completion. And although the barn and the house were separate buildings, the bond and its penalty is an entirety, and I understand it to be of the very nature of security that when, by the independent act of the creditor, a surety is released in part he is released in whole. But the fact stares us in the face that there are no allegations of pleading in the answer under which evidence of the payment above referred to was admissible or a verdict or a judgment following which could find, or adjudge, that the sureties were released thereby; and it has often been held in this as well as other courts that no finding or judgment will stand unless supported by a pleading.

At the close of the trial counsel for the defendants (plaintiffs in error), as appears by the record, applied to the court for "leave to amend their answer, alleging that plaintiff did not pay Sweet & Wilson at the time named in the contract," which was refused. This refusal of the court to permit plaintiffs in error to amend their answer in accordance with the evidence is assigned for error. Had application been made at the proper time to amend the answer so as to set up the payment by the plaintiff of the $300 for the stable before the stable was completed, and so before said money was due under the terms of the contract, the application should have been granted, as such amendment would make the answer applicable to and in accordance with evidence, which had been in part given by the

plaintiff himself while on the stand as a witness in his own behalf, and in part given by the defendant Wilson, without objection. But there was no evidence which would be applicable to an amendment such as was indicated by the application.

, As to the question of the inadmissibility of evidence to prove the dates of the payments actually made on the work by the plaintiff under the pleadings as they stand, there can be no doubt, either upon the theory that such payments, or some of them, were made before they were due under the terms of the contract, or that they were delayed and withheld for an unreasonable time after they became due respectively.

The instructions 2 and 5 asked for by defendants (plaintiffs in error) and refused by the court, state the law correctly, abstractly considered, but were properly refused for the reason that there was no evidence before the court and jury, under the pleadings in the case, to which the same were applicable.

In addition to that which has already been said upon the point of the admitting and refusing to admit testimony there remains the consideration of the admitting in evidence of the records of the district court in the case of *Henry & Coatsworth v. Sweet & Wilson et al.;* also the answers and cross-petitions of the defendants in the case, together with the decree, and also the testimony of the clerk of said court as to who paid the judgment of Henry & Coatsworth.

It appears from the record, which was offered and received in evidence upon the trial, and is preserved in the bill of exceptions, that some time in the month of September, 1887, the Henry & Coatsworth Company, a corporation, filed its petition and commenced an action in the said district court of Gage county against C. G. Dorsey, Crump & Nicholson, Armacost & Co., Charles A. Sweet and Charles S. Wilson, partners as Sweet & Wilson, J. L.

McGee, E. G. Drake & Co., Frank Hall, and the Dempster Mill Manufacturing Company, defendants; the purpose and object of which action was to establish and foreclose a lien upon the said house and barn and the lots upon which they were situated, for certain building materials, set out in a schedule attached to said petition, furnished by the said Henry & Coatsworth Company to the said Sweet & Wilson, contractors, for the erection of said house and barn for the said J. L. McGee, under the contract therein referred to; that the defendants to said last mentioned action and petition, other than the said Sweet & Wilson and J. L. McGee, were made such for the reason that they and each of them had or claimed to have liens upon the said buildings and lots for material by them severally furnished to the said Sweet & Wilson, contractors as aforesaid, and by them used in the construction of said buildings; also, that on the 17th day of November, 1887, the said C. G. Dorsey appeared in said court by his attorneys and presented and filed his answer and cross-bill in said action, in which he alleged by way of admission the entering into the said contract by the said Sweet & Wilson with the said J. L. McGee for the erection of said house and barn, being the same buildings described in the petition of said Henry & Coatsworth Company, and for the furnishing of all the materials therefor; that in pursuance of said contract, and for the purpose of carrying it into effect, said defendants Sweet & Wilson purchased of the defendant Dorsey certain building materials, set out in the schedule attached to said answer and cross-bill; that said materials were furnished and were of the value therein named; with other allegations apt and pertinent to the claim of said Dorsey for the establishment and foreclosure of his lien upon the said buildings and lots for the amount and value of said materials.

It further appears from the said record, that on the 9th day of December, 1887, the said cause came on for a hear-

ing in the said court upon the petition of the said Henry
& Coatsworth Company, plaintiff herein, the answer of
defendant therein, J. L. McGee, the cross-petitions of de-
fendants, the Dempster Mill Manufacturing Company,
E. G. Drake & Co., C. G. Dorsey, Crump & Nicholson,
and Armacost & Co., and the answers of the defendant
J. L. McGee to said cross-petitions, and the evidence; the
defendants Sweet & Wilson and Frank Hall, having failed
to answer or demur to said petition and cross-petitions,
the same were taken as confessed as to them ; that there was
a trial to the court upon the merits and final judgment ren-
dered, etc.

The introduction of this record in evidence was objected
to by the defendants (plaintiffs in error) as immaterial, in-
competent, and irrelevant, which objection was overruled
and the evidence admitted.

There were three motions for a new trial, one by all the
defendants together, one by the defendants Sweet & Wilson,
and one by the defendants Dorsey and Weston, plaintiffs
in error, separately. Neither one of them contains as
ground for a new trial the admission in evidence of the
said record specifically. The one made by Dorsey and
Weston contains, among other grounds, "errors of law
occurring at the trial." Possibly under this head the ques-
tion whether the court erred in overruling the objections
to the admission of the said record in evidence might be
inquired into. I find no reason for the exclusion of the
record from the evidence, in so far as the defendant C. G.
Dorsey is concerned. He is a party to the record; was
in court when it was made up; he is therefore not a
stranger to the proceedings of which said record is evidence
and he is bound thereby. (See Greenleaf on Evidence,
vol. 1, sec. 522.) But Weston was a stranger to the said
record, and by the same authority it was inadmissible as
evidence against him. But to render the error of the ad-
mission of this record in evidence against him available, he

must have moved for a new trial separate from and disconnected with Dorsey or any party to the said record. This he did not do.    The reason for this is, that, to make a ruling, judgment, and decision of a trial court overruling and denying a motion a ground of reversal on error, the motion must be presented to the court in the very terms in which it ought to be sustained and allowed.    This is not the case where a motion is made jointly by two parties, one of whom is not entitled to a favorable ruling thereon, although the other one is entitled to such ruling.

It does not follow from the above rule that a trial court may not, where a motion is divisible, in its discretion, allow it in part and overrule it in part.    But a failure or refusal to do so is not reversible error.

Counsel for plaintiffs in error filed a supplemental brief, in which they take the ground that it was the duty of the plaintiff to retain the money, which, by the terms of his contract with Sweet & Wilson, he was to pay them in the several installments therein expressed, as the work progressed, until the expiration of sixty days after the same became due, by reason of the completion of so much of the work of the buildings, and that by making these payments sooner the plaintiffs deprived the plaintiffs in error of an indemnity for their obligation upon their bond, and thereby released them, citing the case of *Taylor v. Jeter*, 23 Mo., 244. Counsel, by this supplemental brief, but restate the position already disposed of with but a slight variation in its application.    There was evidence before the court, of the date of the payments by the plaintiff to Sweet & Wilson, of the sum of $300 for the barn, and that the same was not then due, for the reason that the barn was not then completed ; and, as we have already seen, this evidence was unavailable to the plaintiffs in error for the want of allegations of pleading, to which it was applicable.    We have already seen that the several amounts paid by the plaintiff to Sweet & Wilson, together with the dates of such payments, re-

spectively, were testified to by the plaintiff, and that, upon the theory that such payments, or some of them, were delayed and not made at the time named in the contract, plaintiffs in error applied to the court for leave to amend their answer by inserting the allegation that plaintiff did not pay Sweet & Wilson at the time named in the contract; but no application was made to so amend the answer as to let in evidence of premature payments, either for the purpose of sustaining the theory contended for by counsel in the brief, or the supplemental brief. I am, upon the whole case, unable to find reversible error in the record. The judgment of the district court is therefore

AFFIRMED.

THE other judges concur.