NATIONAL SURETY COMPANY v. LONG.

Opinion delivered July 2, 1906.

1. BUILDING CONTRACT—DISCHARGE OF SURETY.—A stipulation in the bond of a surety company guarantying the performance of a building con- tractor's undertaking that the obligee should pay only 75 per cent. of the value of the work done and materials furnished and incor- porated in the building was for the protection of the surety as well as the obligee; and where the latter disregarded it by paying 100 per cent. instead, the former was discharged from liability. (Page 528.)

2. SAME—DELAY IN NOTIFYING SURETY—EFFECT.—Where the bond of a surety company guarantying the performance of a building contract provided that the company should "not be liable for any damages. on account of delay in the performance of any work or the furnish- ing of any material unless the principal shall, without reasonable excuse, purposely and premeditatedly delay the completion be- yond the time limited by the contract," and that, if the principal should fail in any matter, the obligee should immediately notify the company in writing, the company was not discharged because the obligee waited twelve days after the principal's default in completing the work before notifying the company thereof. (Page 532.)

Appeal from St. Francis Circuit Court; *Hance N. Hutton,* Judge; reversed.

### STATEMENT BY THE COURT.

The complaint of Long alleges that on May 23, 1901, he made a written contract with one Humphreys, by which the latter agreed to furnish the material and erect a brick building and to complete the same on or before September 1, 1901, "for which Long was to pay him $6,600, and it further alleged that the National Surety Company had, by its bond (dated May 28, 1901) guarantied the faithful performance of Humphreys' contract. As a breach, it is alleged that, although Long paid Humphreys $4,908.58, the latter never did complete the house, but that on September 9, 1901," he abandoned it, and left the country, and that plaintiff had to expend more than $4,671.41 to complete the building.

The plaintiff joined as defendants with the National Surety Company T. L. Humphreys, American Bonding & Trust Co., J. S. Whiting and S. M. Whiting.

The National Surety Company for its separate answer denied all liability on the bond, and set up that, under the contract between Long and Humphreys, the latter agreed to complete the building by September 1, 1901, and that plaintiff did not notify this defendant of Humphreys' failure to complete the building by September 1, 1901, until September 12, 1901, and that Long had paid to Humphreys more than three-fourths of the work done and materials furnished and incorporated into the building.

The written contract contained the following stipulations: "The said party of the second part agrees to complete said building by the 1st day of September, 1901, and the said party of the second part further agrees that, in case he fails to complete said building by the 15th day of September, 1901, he shall pay to the said party of the first part as liquidated damages the sum of $5 for each and every day or part of a day that said building remains incompleted after said time; that sum being the actual loss accruing to the party of the first part by said delay."

The contract was attached to the bond, and was expressly made a part of it.

The bond contains the following stipulations: "If at any time the above-named principal shall in any manner fail, neglect, or refuse to keep, do or perform any matter or thing at the time and in the manner in said contract set forth and specified to be by said principal kept, done or performed, the obligee shall immediately so notify the company in writing, by registered letter, prepaid, addressed to the company at its principal office in the city of New York.

"If at any time it appears that the above-named principal has abandoned the work, or will not be able, or does not intend, to carry out or perform the contract, the obligee shall immediately so notify the company in writing by registered letter, prepaid, addressed to the company at its principal offices in the city of New York, and the company shall have the right, at its option, to assume such contract and to sublet or complete the same, and, if it so elect, all moneys due or to become due thereafter under said contract, including percentages agreed to be withheld until completion, shall, as the same shall become due and payable under the terms of said contract, be paid to the company, regardless of any assignment or transfer thereof by the principal.

"The failure, neglect, or refusal of the obligee to keep, strictly observe and fully perform any matter or thing in this bond or in said contract stipulated and agreed to be done, kept or performed by the obligee, at the time and in the manner so specified, shall relieve the company from all liability under this bond."

The evidence shows that the building was not more than three-fourths completed on September 12, 1901, and that less than this had been done on September 1, 1901. That on September 12, 1901, Long notified this defendant that Humphreys had abandoned the work, and that the building, which was to have been completed by September 1, 1901, had not been completed.

The written contract between the parties contained the following:

"The said party of the first part agrees to pay to the party of the second part for said work the sum of six thousand six hundred dollars ($6,600), the contract price, to be paid in installments according to written estimates to be made by the architect

cr the superintendent as the work progresses, payments to be made not oftener than as allowed in the bond, and said installments are to be seventy-five per cent. of the value of the work done and materials furnished and incorporated in the building, the remaining twenty-five per cent. of said contract price to be paid by the party of the first part to the party of the second part in ten days after the building is completed and accepted."

The evidence shows there was no architect or superintendent employed, but that Long acted as such on his own behalf. Long testified in his own behalf that he paid Humphreys $4,908; that that was a little less than three-fourths of the amount of the contract price, that the work and labor done the last time he paid Humphreys was $3,200, and that this did not embrace the material on the ground; that the material on the ground amounted to $1,600 or $1,700; and then said that the work and material when Humphreys left amounted to $6,600, and that he had to pay for about $1,700 worth of lumber above what he had paid Humphreys for material which Humphreys had bought. All the other evidence shows that a less amount of work has been done when Humphreys left and abandoned the building. There was also evidence to show that the building could have been completed at the time Humphreys abandoned it for $2.885.

*W. S. McCain,* for appellant.

1. A failure to have estimates made and to withhold the reserve releases the surety, even where it is not so provided in the bond. 49 Col. 131; 57 Fed. 179; 52 N. W. 1110; 91 Cal. 233; 67 N. W. 913; 2 Keen. 638; 105 Wis. 445; 54 Pac. 1122; 23 Mo. 251; 68 Conn. 495; 36 Minn. 439; 11 S. W. 608; 62 Mo. App. 69. But in this it was stipulated that appellee hold 25 per cent. in reserve for the benefit of the surety company. His failure to do so released the latter from its bond. 73 Ark. 473; 50 Ark. 229; 34 Ark. 80; 59 Ark. 47.

2. Under the stipulations in the bond, it was appellee's duty to notify appellant not later than September 1, 1901, of Humphreys' failure to comply with his contract. Notice mailed on September 12th was not a compliance with the bond. 60 C. C. A. 623. On this point that decision is *res judicata.* 168 U. S. 48; 193 U. S. 553; 1 Crawford's Digest, § 163, and cases cited;

1 Freeman, Judg. § 249; 20 Ark. 85; Cooley's Const. Lim. 47. But even if the question be treated as *res nova*, this court can not reach the conclusion that notice given on September 12 was "immediate" within the stipulation of the bond. 20 Ark. 583; 23 Ark. 205; 1 Pet. 583; 99 Wis. 447. See, also, 13 Conn. 28; 43 Ill. 155; 29 Pa. St. 198; 75 Mo. App. 349.

*S. H. Mann* and *P. D. McCulloch,* for appellee.

1. That the decision of the Circuit Court of Appeals is not *res judicata,* is settled by the authorities. 210 Ill. 342; 108 Tenn. 670; 15 Ohio St. 464; 7 Wall. 82; 125 U. S. 555; 150 U. S. 349.

2. The contract did not require appellee to employ an architect or superintendent. The mere fact that payments were made without certificates of an architect was not such a departure from the terms of the contract as to relieve the surety, where the payments did not exceed the amount stipulated in the contract and bond. 148 N. Y. 241; 69 Ark. 126; 34 Ore. 555. In this case the appellant is not an accommodation but a paid surety, and the contract—proposed by the company and embodying its language—must be liberally construed. *United States* v. *American Surety Co.,* U. S. Sup. Court (advance sheets) citing 95 U. S. 673; 127 U. S. 661; 4 H. L. Cas. 484; 170 U. S. 130; 139 N. Y. 266; 27 Wash. 429; 57 S. C. 459; Stearns on Surety, 321.

3. On the question of "immediate" notice, the clause requiring notice of failure or refusal of the contractor to perform the contract, has no reference to the time of performance, where it does not appear that the surety was prejudiced by the delay in giving notice. Under the ninth clause of the bond the company was concerned in no delay not purposely and premeditatedly occasioned by the contractor. *Ubi supra.*

The question whether or not the notice given was "immediate" within the meaning of the bond, was one of fact for the jury to decide. 186 U. S. 342; 71 N. H. 362; 27 Wash. 429; 136 Ala. 379; 86 Ala. 559; 47 Conn. 553; 56 Vt. 374; 49 La. Ann. 636; 46 Ia. 631; 100 Ill. 644; 62 Neb. 673; 31 Gratt. (Va.), 362; 62 O. St. 529; 126 Pa. St. 317; 32 Wash. 132; 28 Ind. App. 437; 164 Mass. 382; 135 N. Y. 298; 98 Pa. St. 280; 27 Ore. 146; 88 Wis. 589; 140 N. Y. 25; 124 Mo. 204; 160 N. Y. 595; 100 N. Y. 417; 170 Mass. 173; 80 Ia. 56.

CARMICHAEL, Special Judge, (after stating the facts.) A majority of the court are of the opinion that the undisputed evidence shows that Long did not notify the National Surety Company within the time in which he was required to do so by the contract and bond. The time for the completion of the building was September 1, 1901, and the evidence shows that the appellee knew, sometime prior to that date, that the contractor would not complete the building by that date, and the bond specially provided that, if at any time it appeared that the contractor would not be able to complete the building by that time, the appellee would immediately notify the surety company. We think, as a matter of law, the notification on September 12 did not meet the requirements of the contract and bond, that the default of Long in not notifying the surety company within the time required was a substantial breach of the contract, and that he can not maintain an action against the other contracting party. As was said in this case, when in the Federal court, in the 125 Fed. Reporter, page 892: "This bond contains mutual covenants of the parties; covenants by the surety company that Humphreys, the principal, should construct the building, and keep it free from liens; covenants by the plaintiff that, if Humphreys was unable or failed to perform the contract in the time and manner therein specified, he would immediately notify the surety, and that the latter might then take the contractor's place. The plaintiff failed to keep his covenant before the surety company had in any way failed to comply with those which it had made. On this account he can not enforce the fulfillment of the covenant of the defendant. He who commits the first substantial breach of the contract can not maintain an action against the other contracting party for a subsequent failure on his part to perform;" citing many authorities. *National Surety Co.* v. *Long,* 60 C. C. A. 623.

Long agreed in his contract that he would pay to Humphreys in installments, according to written estimates to be made by an architect or superintendent as the work progressed, 75 per cent. of the value of the work done and materials furnished and incorporated in the building." The evidence clearly shows that he failed to keep this part of his contract. He states himself that at the time Humphreys left there was $1,600 to $1,700 worth of

material on the ground, and that the work done. and materials furnished and incorporated into the building, together with the amount of lumber on the ground, amounted to only $6,600, or the contract price. Giving him the benefit of the smallest amount, or $1,600 worth of material on the ground, and subtract this amount from the $6,600, the contract price, and the total amount on which he says he based the 75 per cent. which he paid to the contractor Humphreys would leave only $5,000 for work and material which had been incorporated into the building. 75 per cent. of $5,000 is only $3,750, showing that he had overpaid Humphreys the sum of $1,148 at that time, or, taking his other statement that there was $3,200 for work, labor and material in the building, not embracing the material on the ground which amounted to $1,670 the two aggregating, that is the work, labor and material not embracing the material on the ground and the $1,670 for the material on the ground, would only make a total of $4,870, which would include everything, work, labor and material incorporated into the building and the material on the ground, so that a payment of $4,908 was more than 100 per cent. of the work, labor and material incorporated into the building and material on the ground. This clearly shows that Long either wilfully, or from a misconception of the meaning of his contract, or out of generosity to Humphreys, paid much more than he was entitled to pay under his contract and bond. We think his conduct in this regard released the surety company, because it affected the liability of the surety, and the clause in reference to this was not intended solely for the protection of the owner. As was said by Judge RIDDICK in *Lawhon* v. *Toors,* 73 Ark., page 476: "Counsel for Lawhon contends with much earnestness that this provision of the contract in reference to the reservation of a portion of the contract price until after the performance of the contract was intended solely for the protection of the owner, and that the failure to retain it did not affect the liability of the surety. If this was a new question, it might be worthy of some consideration, but it is now well settled that, if a stipulation of that kind in a building contract be waived without the consent of the surety, it operates to discharge him from liability on his bond for the performance of the contract."

To quote the language of Lord Langsdale in *Calvert* v. *Lon-*

*don Dock Company,* 2 Keen (Eng. Chan.), 644, the payment of the money before the completion of the contract was calculated to make it easier for the contractor "to complete the work if he acted with prudence and good faith; but it also took away that peculiar sort of pressure which by the contract was intended to be applied to him." So we think in this case that the retention of 25 per cent. of the work done and material incorporated into the building would have been an effective incentive to compel the contractor to complete his work, while an overpayment was a temptation to abandon his work, to the injury of this surety. If there would have been any peculiar pressure upon the contractor in holding back part of the contract price, *a fortiori* it would have have increased the pressure to hold back part of the price of the work already done. The contractor had a present interest in the work already done and incorporated into the building, when he would only have had a prospective interest in the part of the contract price retained.

We have not overlooked the fact that the appellant in this case is not an accommodation surety, but is a paid surety, and we recognize the difference between them (*Remington* v. *Fidelity & Dep. Co.,* 27 Wash. 429; *Walker* v. *Holtzclaw,* 57 S. C. 459); but we hold that a paid surety is only bound by the stipulations of his contract of suretyship.

The evidence is not sufficient on this point to sustain the verdict. Where there is nothing to do but make additions of figures, and the verdict is contrary to the results so obtained, the verdict is not supported by the evidence.

Reversed and remanded.

HILL, C. J., and RIDDICK, J., dissent.

HILL, C. J., (dissenting.) 1. The bond provides: "The company shall not be liable for any damages on account of delay in the performance of any work or the furnishing of any material, unless the principal shall, without reasonable excuse, purposely and premeditatedly delay the completion beyond the time limited by the contract, and in no event shall the liability of the company on account of delay exceed a sum equal to five per cent. of the penal sum of this bond." Having expressly stipulated that delays, except a delay purposely and premeditatedly caused, should

not create a liability on the bond, it seem to me that the surety company can not in good grace say that because it was not notified of delay it is released. The undisputed evidence is that the notice was given the next day after appellee learned that the contractor had abandoned the work; that was the first time the surety company was interested, the abandonment falling within the clause of purposely and premeditatedly delaying the work and other clauses of the contract. To permit a bondsman to stipulate that delay in the work shall not create a liability against him, and then to release him because he was not notified of the delay, is a proposition which does not meet my concurrence.

2. The reversal on the facts is also, in my opinion, erroneous. I fully concur in the rule that where a mathematical calculation demonstrates that there is no basis for an action, although such action is sustained by witnesses swearing against matters demonstrably otherwise, then such evidence is not substantial evidence sufficient to sustain a verdict. A familiar illustration of this principle is where a witness with good eyesight and hearing in plain daylight looks along a level and straight railroad track and says he does not see nor hear an approaching train as it bears down on him till he is struck. Then his evidence against such an impossibility of failing to see and hear is not substantial evidence, and will not sustain a verdict. But, as I understand this case, such is far from the facts. If the material and work done were worth no more than the contract price, then the calculation made would demonstrate the correctness of the court's position. But it is evident that this was a case of a contractor far underbidding the actual value of the work undertaken. It required $3,032 more to complete the building than the contract price called for. Appellee and two contractors testified to the state of the building when it was abandoned. They variously estimate it from 65 to 75 per centum finished. If this testimony was treating the contract price as the basis to make the estimate from, then the majority of the court is right; if they were referring to the real value of the building, then manifestly the majority is in error.

As the two contractors were called to explain how much the whole building was worth and estimates they made to complete it, the fair construction is that they were referring to the real

value of the work and material, and not what may have been the contract price.

This question was submitted to the jury under an instruction given at instance of appellant; and I respectfully dissent from the holding that there are not facts enough to sustain the verdict.

### ON REHEARING.

### Opinion delivered October 15, 1906.

J. H. CARMICHAEL, Special Judge. A majority of the court in the former opinion in this case held that the date for the completion of the building under the contract and bond was September 1, 1901, and that a failure on the part of the appellee to notify the surety company that the contractor would be unable to complete the building by that date, and a notification sent to said surety company on the 12th of September, 1901, was too late, and prevented a recovery by the appellee.

While Mr. Justice BATTLE and the writer adhere strictly to the opinions expressed in the original opinion, Mr. Justice WOOD, after careful research, has decided to concur with Chief Justice HILL on this point, and hence a majority of the court now concur on this point with the views expressed by Chief Justice HILL, but a majority of the court are still of the opinion that under the evidence, as set out in the record, there was a substantial breach of the contract and bond by the appellee herein, as set out and expressed on other points in the original opinion, and therefore, feeling that no injustice would be done by a reversal of the case, the motion for rehearing is denied.

Mr. Justice BATTLE. I think the action should be dismissed.