307 F.2d 214
 Gary H. REID and Trinity Universal Insurance Company, Appellants,
v.
MILES CONSTRUCTION CORPORATION and Great American Indemnity
Company of New York (Defendants) and Banco Land
Company et al. (Intervenors), Appellees.
 No. 16887.
 United States Court of Appeals Eighth Circuit.
 Aug. 21, 1962, Rehearing Denied Sept. 11, 1962.
 
 1
 William Andress, Jr., Dallas, Tex., made argument for appellants and A. L. Barber, of Barber, Henry, Thurman & McCaskill, Little Rock, Ark., with him on the brief.
 
 
 2
 Edward Lester and Robert Shults, of Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., made argument for appellees and filed brief.
 
 
 3
 Before VOGEL and RIDGE, Circuit Judges, and DEVITT, District Judge.
 
 
 4
 DEVITT, District Judge.
 
 
 5
 This is an appeal from a judgment of the District Court in favor of the defendants on their counterclaim for damages resulting from the claimed breach of a construction subcontract in connection with the building of a Capehart Housing Project at the Little Rock, Arkansas, Air Force Base.
 
 
 6
 Diversity of citizenship and the requisite amount in controversy are established.
 
 
 7
 One of the appellants, Gary H. Reid, a masonry subcontractor, originally instituted a declaratory judgment action against the prime contractor, Miles Construction Corporation, one of the appellees, to determine whether Miles had breached its subcontract by underpaying a progress payment.
 
 
 8
 Subsequently, the pleadings on both sides were amended so that Reid sought recovery of damages against Miles and its surety for the claimed breach of the subcontract, and Miles and its subsidiaries sought by counterclaim to recover against Reid and his surety for damages allegedly occasioned by Reid's refusal to complete the subcontract.
 
 
 9
 The District Court entered judgment for the defendants for the amount asserted in their counterclaim, representing the cost of completion of the subcontracts, plus, in the case of Trinity Universal Insurance Company, the statutory penalty of 12% and reasonable attorneys' fees. This appeal followed.
 
 
 10
 The principal issue is one of fact-- who breached the contract, Reid or Miles? Judge Yound, the trial Judge, found that Reid did. Here is his reasoning in support of that finding and of his determination as to the extent of damages, as set out in an unreported memorandum decision:
 
 
 11
 'It is unnecessary to state in detail the dealings between these parties, or to decide many of the issues urged by the parties, for in the view of the court the determination of which party had breached its contract on September 17, 1958, the date Reid refused to further perform because of the alleged underpayment of his August 25, 1958 monthly estimate, decides this action, and this determination depends in turn upon whether Reid had been underpaid for his masonry work and brick inventory on September 17, 1958.
 
 
 12
 'The amount that Reid insists that he was underpaid on his monthly estimate of August 25, 1958 has fluctuated considerably through the various stages of this suit. On September 13, 1958 Reid protested by letter to Miles Construction Corp. that he had been underpaid $5,388.74 on this estimate, and this was the figure asserted in the original complaint, filed September 17, 1958. In an amemdment to such complaint, filed December 3, 1959, Reid stated 'On the August estimate, however, due September 10, 1959, defendant defaulted, and failed to pay plaintiff the amount of his estimate, the total payment made to plaintiff on such date being more than $7,000.00 short of the amount due and owing to him.' Reid testified at trial that Miles Construction Corp. reduced by $4,887.00 two of the three inventory estimates that he submitted, and states in his post-trial brief that 'substantially, this is the action which brought on the law suit'. However, also at trial, Reid testified that he had been underpaid by $6,002.00 over the whole contract up to September 17, but in his posttrial brief now figures the total contract underpayment at $3,779.44. This last figure, which the court will take as the amount Reid insists that he was underpaid on his subcontract, was developed as follows:
 
 
 13
 "12 units with fireplaces at $90.00 ..... $10,800.00
880 units at $75.933 ..................... 66,821.04
Total due on Construction of 892 units ... 77,621.04
Miles-Fairfax retainage (10%) ............. 2,810.00
Contract increase to cover union dues ....... 447.00
Inventory estimate--Aug. 25, 1958 ........ 13,692.15
Total due Reid as of Sept. 17, 1958 ...... 94,570.19
Total payments to Reid--Sept. 17, 1957 ... 90,799.75
 ----------
Shortage asserted ....................... $ 3,779.44
 ----------
 
 
 14
 'The court finds, however, that there was no such underpayment, either in this last claimed amount or in any greater amount. The amount due Reid under his theory of payment, using the number of housing units that the record shows to have been complete as of August 25, 1958, is as follows:
 
 
 15
 "12 units with fireplace at $900.00 (sic) .. $10,800.00
842 units at $75.933 ........................ 63,935.59
Total due on Construction of 854 units ...... 74,735.59
Miles-Fairfax retainage (9 1/2%) (Note 1) .... 2,670.00
Contract increase to cover Union
 Dues .......................................... 447.50
Contract increase to cover extra work ........... 90.84
Inventory estimate--Aug. 25, 1958 ........... 13,692.15
 ----------
 Sub-total ................................. $91,636.08
Less charge for roof-stain correction .......... 212.11
 ----------
Total due Reid as of September 17,
 1958 ...................................... $91,423.97
Total payments to Reid--Sept. 17, 1958 ...... 91,238.25
 Less 0.5% maintenance retainage ............... 140.00
 ----------
 (Note 1)
 $91,098.25
 ----------
 Difference ................................ $ 325.72
 ----------
 
 
 16
 'Note 1. The evidence indicates that Miles-Fairfax paid Reid the total retainage of $2,810.00 due under that part of his subcontract, but that Reid gave his check for $140.00 to Miles-Fairfax to cover the 0.5% maintenance escrow that was to be held for one year, so that Reid in net effect received the 9.5% retainage due for Miles-Fairfax when that section of the project was complete and accepted, as his contract provided. Although Miles-Hawthorne was complete as of September 17, 1958, the government had not, as of that date, released the contract retainage, so that Reid was not entitled to any other retainage amounts; by his amended complaint Reid abandoned his claim for Miles-Hawthorne retainage.
 
 
 17
 'Two points may be noted as to this tabulation. First, Reid claimed that he did not complete any units after August 25, 1958, so that the number of completed units as of September 17, 1958, was the number for which payment was due. While the record is not in total harmony as to the units complete on September 17-- 888, 892 or 896 are figures used at various times in the record-- it is clear that Reid's workmen were on the job a substantial number of hours in the period between August 25 and September 17, contrary to Reid's testimony, and the court does not accept his testimony that no units were completed after August 25. The figure of 854 units complete as of August 25, 1958 stands without contradiction from any other witness or exhibit.
 
 
 18
 'Second, in making this tabulation the figure of $13,692.15 was used as the amount due Reid on his inventory estimate. However, under any theory of amounts due Reid per unit the five joint ventures had only obligated themselves to pay 75% of inventory on hand for which suppliers had been paid-- a normal requirement to avoid materialmen's liens. Reid had over $20,000.00 of unpaid invoices for brick as of September 17, 1958, including brick for which payment was requested on August 25, 1958, so that proper reduction of his certified inventory estimate would show payment by an amount substantially in excess of that to which he was entitled under his own theory.
 
 
 19
 'Additionally, there is every indication that the asserted underpayment of the August 25, 1958, progress payment was not the cause of Reid's decision to refuse further performance of his subcontract. Reid's bid on the project was substantially below any other masonry bid; he originally planned to use non-union Mexican labor, in large part, coupled with practices not sanctioned by the local union, plans which went awry when the union protested; Reid testified that the costs of his work to September 17, 1958, were $95,137.62, and he had informed one of (Fol. 93) defendant's officers that he anticipated a loss of $36,000.00, though he now claims that this figure was inflated in an effort to obtain a revision of the total amount of his subcontract. In any event, Reid's refusal to perform after September 17, 1958, was not justified and constituted a breach of his subcontract. His claim for damages sustained by reason of delay in having the project ready for masonry work is likewise without merit; Reid offered no evidence to dispute defendants' testimony that the delay was caused by rain, but, even should it be held that he is entitled to damages for the delay in starting his work, still there is no substantial evidence showing with any reasonable certainty the extent of such damage.
 
 
 20
 'Reid has raised two issues as to the amounts the defendants seek to charge him with as their costs of completing his breached subcontract. His major objection is to the reasonableness of the costs and expenditures, but the court finds that the amounts claimed were both reasonable and necessary to the completion of the project. The mere showing that some of the costs were more than Reid had incurred on similar purchases is not persuasive evidence to the contrary, for Reid offered no evidence from which his costs could be accurately calculated, and it is clear that his personal ideas of how his job costs should be figured are erroneous-- for example, he made no allowance for transportation cost of end bricks purchased in Dallas, Texas-- and, further, there was testimony that the abandonment of some of Reid's practices-- as in the mixing of mortar-- affected saving on the total completion operation though requiring higher per-unit purchase costs. Reid also contests the allocation of $432.50 in the Miles-Hawthorne area as a cost of finishing his subcontract, asserting that this was not within his subcontract as it was for cleaning paint off bricks. However, the testimony shows that the person doing the paint removing was also employed by the defendants to do work within the masonry (Fol. 94) contract, and the dispute actually concerns only a few of the buildings covered by the invoice supporting the $432.50; further, none of the vouchers supporting this check were introduced into evidence. The evidence on this point is not so clear that it can be said to dispute the unequivocal testimony that the check was for work covered by the masonry subcontract.
 
 
 21
 'Defendants are therefore awarded judgment against Reid as prayed in their seconded amended counterclaim.'
 
 
 22
 Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires that findings of fact by the trial court shall not be set aside unless clearly erroneous and that due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.
 
 
 23
 This Court has consistently held that it will not attempt to substitute its judgment, based upon the cold record, for the judgment of the trial court in determining credibility of witnesses and disputed fact issues. The responsibility for doing that is vested in the trial court, and its findings can be set aside onky upon a clear showing that they are without substantial evidentiary support or were induced by an erroneous view of the law. Fact findings supported by substantial evidence cannot be upset. Geer-Melkus Construction Co. v. .united States, 8th Cir. 1962, 302 F.2d 181; Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8th Cir. 1961, 295 F.2d 223, 227; Nelson v. Seaboard Surety Company, 8th Cir. 1959, 269 F.2d 882, 886; Pendergrass v. New York Life Ins. Co., 8th Cir. 1950, 181 F.2d 136, 138.
 
 
 24
 Upon a review of the record, it is our judgment that the findings of Judge Young as set out in his memorandum were not induced by an erroneous view of the law and are amply warranted by the evidence and the reasonable inferences to be drawn from it.
 
 
 25
 Appellants also urge that because the appellees advanced money to Reid before it was actually earned under the subcontract, Reid's surety, Trinity Universal Insurance Company, is thereby relieved of its obligation under the bond. In his memorandum, Judge Young discussed and decided this contention as follows:
 
 
 26
 'There is one additional matter in dispute between defendants and Reid's bonding company, Trinity Universal Insurance Company. The record reveals that on three occasions defendants advanced money to Reid before it was earned and owing under the subcontract, which, Trinity insists, releases its obligations under its bonds for Reid's subcontract. One advance, however, was for work covered by the Miles-Hawthorne bond, upon which no claim is asserted by defendants, and there was no advance work covered by the Miles-Naylor bond, so that there can be no dispute as to the right of the defendants to recover against Trinity their judgment, plus statutory penalties and fees, on such bond.
 
 
 27
 'This strict rule of forfeiture of rights under a bond given by a compensated surety by the making of payments on a contract prior to their being due is not generally favored by the law, see Payment or advancements to building contractor by obligee as affecting rights as between obligee and surety on contractor's bond, 127 A.L.R. 10, and Trinity has shown no prejudice to itself from these advances. On the other hand, the testimony was that the advances were made to Reid to enable him to continue performing his work, a matter certainly of benefit to Trinity. It may also be observed that the advances were to be recouped from future payments on work in these two areas, as was the advancement in Miles-Hawthorne, and the advances were for amounts less than 10% of the total bonded sum. The record does not disclose whether any of these advances were partially recouped in the payments made by Miles-Layden or Miles-Hendry to Reid on September 10-11, 1958, though presumedly they were to have been. While National Surety Co. v. Long, 79 Ark. 523, 96 S.W. 745 (1906) stands for the rule of strict forfeiture, it may not be said without doubt that this is still the Arkansas law, for in Powell v. Fowler, 85 Ark. 451, 108 S.W. 827 (1908), the court indicated in dictum that the discharge effected by a charge of payment terms would only be a discharge to the extent that the surety was damaged by the change, where the change did not increase or extend the surety's liability, or did not materially change the contract obligation, which is certainly the situation in the present case. See also, Restatement, Security, 128 (1941). I hold, therefore, that the advancements made by Miles-Layden and Miles-Hendry did not discharge Trinity from its bonds to these two joint ventures, and they may recover against Trinity as prayed in their second amended counterclaim.'
 
 
 28
 The principle which governs our consideration of this point has been stated and followed many times. It is that if a federal district judge has reached a permissible conclusion upon a question of local law, we will not reverse even though we may think the law should be otherwise. National Bellas Hess, Inc. v. Kallis, 191 F.2d 739, 8th Cir. 1951, cert. den. 342 U.S. 933, 72 S.Ct. 377, 96 L.Ed. 695; Village of Brooten v. Cudahy Packing Company,291 F.2d 284, 8th Cir. 1961, and cases there cited. In accordance with this principle, we do not disturb the legal conclusion stated by Judge Young. It may be true, as is argued by appellants, that the Supreme Court of Arkansas, were it to pass on this question as to the release of a surety where there has been a claimed modification of the surety contract, would hold that Trinity was relieved. But that is only a prediction. Judge Young has predicted otherwise. And we have consistently refused to out-predict or outguess District Judges as to the interpretation of the law of their state. Homolla v. Gluck, 8th Cir. 1957, 248 F.2d 731. The appellants' burden to show error in cases of this kind is a heavy one. National Bellas Hess, Inc. v. Kallis, supra, and Kimble v. Willey, 8th Cir., 204 F.2d 238, 243, 38 A.L.R.2d 814. The question on review is not whether the conclusion reached is a correct one, but whether it is a permissible one. We think it is.
 
 
 29
 Trinity next contends that it is not liable for the penalty and attorneys' fees included in the judgment and that the court erred in awarding them. It argues that in a fact situation such as is presented here, the surety is not liable in the absence of a demand and refusal to pay completion costs.
 
 
 30
 Apparent authority for the imposition of the penalty and the assessment of attorney's fees is contained in Section 66-514 of the Arkansas Statutes of 1947 which provides:
 
 
 31
 'Recovery of amount due and damages.-- In all cases where loss occurs and the * * * surety * * * company * * * liable therefor shall fail to pay the same within the time specified in the policy, after demand made therefor, such (company) shall be liable to pay the holder of such policy, in addition to the amount of such loss, twelve (12) per cent damages upon the amount of such loss, together with all reasonable attorneys' fees for the prosecution and collection of said loss * * *.'
 
 
 32
 This statute has been held to be applicable to sureties upon contractors bonds. Trinity Universal Insurance Company v. Smithwick, 8th Cir. 1955, 222 F.2d 16. We held in that case that the filing of suit operated as a demand. The filing of the counterclaim here did the same thing and properly may be viewed as a demand upon the surety. It appears manifest under this statute that Trinity is liable for the penalty and the attorney's fees. We accept Judge Young's interpretation of the law as a permissible one. Village of Brooten v. Cudahy Packing Company, 8th Cir. 1961, 291 F.2d 284, and cases there cited.
 
 
 33
 The final assertion, that the entry of judgment against both the principal, Reid, and his surety, Trinity, permits double recovery, is not claimed by the appellees. Obviously the discharge of the obligation by either Reid or his surety discharges the other. Restatement, Judgments, Section 95. Appellees assured us in oral argument, as they did in their brief, that no such double recovery will be attempted.
 
 
 34
 The judgment is affirmed.