O'NEAL *v.* KELLEY.

Opinion delivered October 1, 1898.

1. SURETY—DISCHARGE BY ALTERATION.—The sureties upon the bond of a building contractor are discharged by an alteration in the terms of the contract, made without their consent, whereby the contractor was bound to erect a larger and more expensive building within the limit of time fixed in the original contract. (Page 552.)

2. SAME.—A surety will be discharged by any material and unauthorized alteration of his contract, and it is immaterial that the principal assured the obligee that the alteration would not affect the original contract, or that he failed to carry out the contract as altered. (Page 553.)

Appeal from Miller Circuit Court.

RUFUS D. HEARN, Judge.

STATEMENT BY THE COURT.

The facts in this case are as follows: The plaintiff, Michael Kelley, on the 28th day of April, 1894, entered into a contract with defendant, C. A. O'Neal, by which O'Neal, for the sum of $2,000 to be paid by Kelley, agreed to furnish materials and erect for said Kelley a two-story brick house in the city of Texarkana. The contract required that the building should be constructed according to specifications named therein, and that it should be completed and turned over to Kelley free of all liens, on or before the 1st day of July, 1894. The defendants, C. C. Dorrian, H. Wolf, W. L. Snow and T. J. Wheeler, became sureties on the bond of O'Neal for the performance of such contract. O'Neal having failed to perform his contract, Kelley brought this action on his bond to recover the sum of $1,000 as damages suffered by him on account of such failure. The sureties set up that there had been a material alteration of the contract. On this point Kelley

testified at the trial as follows: "The contract called for a building 96 feet long for lower story, and 75 feet long for upper story. After the Webber building had given away, I said to O'Neal: 'I wish the upper story of my building had been the same length as the lower story, because I was afraid we would have the same trouble they were having with the Webber building. Mr. O'Neal said it would only take a little extra work, and would in no way affect the contract to make the change. I told him I did not want to do anything that would change the contract, and, if it could be done so as not to change the contract, to figure it up, and say how much it would cost. He did so, and said it would cost me $25, and I gave him a check immediately. The only extra work was the ceiling, flooring and upper joists. The longitudinal walls were already there, and I estimated that $25 was a reasonable price for extra work, and therefore paid it." There was a judgment against the defendants for the sum of $500, from which they appealed.

*King & Searcy*, for appellant.

A surety can not be held beyond the precise terms of his contract. 13 N. Y. 232; S. C. 64 Am. Dec. 545; 60 N. Y. 158; 61 N. Y. 356; 9 Wheat. 720; 6 How. 292; 36 N. Y. 460; 15 Ill. 22; 11 N. E. 232; 23 Mo. 244; 36 Minn. 439; S. C. 31 N. W. 861; 65 Tex. 258; 22 S. W. 620; 11 S. W. 608; 38 S. W. 100; 32 S. Car. 238. Any variation, made without his consent, discharges him. Brandt, Sur. § 79; 32 L. R. A. 565; 28 S. W. 439; 24 S. W. 200; 11 N. E. 232; 36 N. Y. 450; 93 N. Y. 274; 13 N. Y. 232; 48 Ark. 426; 31 N. W. 861; 65· Tex. 258; 22 S. W. 620; 38 S. W. 100. The burden was on the plaintiff to show that the alteration did not injure sureties. 27 Ark. 108. This rule of law has been applied to builder's contracts, as well as any others. 23 Mo. 248; 36 Minn. 439; S. C. 31 N. W. 861; 22 S. W. 620; 11 S. W. 608; 49 Cal. 131; 38 S. W. 100.

*J. D. Cook*, for appellee.

The evidence shows that the acts of Kelley were authorized by the sureties. Said sureties were only entitled to claim credit for delay caused by extra work. 56 Ark. 405.

RIDDICK, J., (after stating the facts). This is an action upon a bond given by O'Neal to Kelley for the performance of a building contract. The contract, for the full performance of which the bond was executed, required that, for the sum of $2,000 to be paid by Kelley, O'Neal should furnish materials and erect a brick building, the lower story of which should be 96 feet long and 14 feet high, and the upper story 75 feet long and 12 feet high. During the progress of the work, O'Neal contracted with Kelly that, for the additional sum of $25 paid him by Kelley, he would build the upper story 96 feet long instead of 75 feet, as required by the original contract. The appellant sureties contend that this alteration of the contract discharged them from further liability on the bond, and we are of the opinion that this contention must be sustained.

"The contract by which a surety becomes bound," says the Supreme Court of Pennsylvania, "is voluntary on his part, without profit or advantage, and without having in view the prospect of gain. It is an act of benevolence to the obligor, and of convenience to the obligee; and of emphatic use to both. The obligations of social duty require, therefore, that he should be dealt with in fairness, and in a spirit of the utmost good faith. The obligor and the obligee are bound to know that if they find it convenient to change or vary the terms of the original contract, they must seek the assent of the surety, because it is his contract as well as theirs. And if they will not do so, they take upon themselves the hazard, and thus loosen the bonds of the surety." *Hibbs* v. *Rue*, 4 Pa. St. 348.

Any material alteration in the terms of such a contract discharges the surety if he has not consented to the change, and this is so even if the alteration be for the benefit of the surety; for, although the principals may change their contract to suit their pleasure or convenience, they cannot thus bind the surety; and as the new contract abrogates the old, the surety is discharged from all liability unless he has consented to the alteration. *Warden* v. *Ryan*, 37 Mo. App. 466; *Judah* v. *Zimmerman*, 22 Ind. 388; *Simonson* v. *Grant*, 36 Minn. 439; *Bethune* v. *Dozier*, 10 Ga. 235; 24 Am. & Eng. Enc. Law, 837; 2 Brandt, Suretyship, §§ 278, 288.

The alteration of the contract shown in this case was material, and there is nothing to show that the sureties consented thereto. It required that O'Neal should erect a building of dimensions different from that required by the original contract, and for which he was to receive a different consideration. It called for the erection of a more expensive building, but no extension was made in the time within which the building was to be completed. As the sureties had undertaken that O'Neal should complete the building within a limited time, an alteration of the contract, by which he was required to build a larger and more expensive building within the same time, was, in our opinion, not only material, but directly against the interest of the sureties; and, as the same was made without their consent, it clearly operated to discharge them.

The fact that Kelley refused to agree to the alteration until O'Neal the contractor had assured him that it would not affect the original contract is a matter of no moment, for O'Neal did not represent the sureties, and they are not bound by his opinion on a question of law. Nor does the fact that he afterwards failed to carry out the contract as altered affect the question. It is the execution of the new contract, and not the performance thereof that discharges the surety.

There is no dispute about the facts of this case, and, after considering the same, we are of the opinion that the judgment of the circuit court against the sureties of O'Neal is not supported by the evidence. The judgment as to them is reversed, and the case is dismissed; but as to O'Neal it is affirmed.