MILLER-JONES FURNITURE COMPANY *v.* FORT SMITH ICE & COLD STORAGE COMPANY.

Opinion delivered March 18, 1899.

1. BUILDING CONTRACT—ALTERATION OF PLANS—LIABILITY OF SURETY.— A contract for a one-story building provided that, unless the work was completed within a period designated, the contractor should incur a penalty, and that the owner might make alterations in the plans without affecting the contract, in which case the architect should determine the amount to be paid or deducted therefor. Without consent of the contractor's surety, the owner changed the plans so as to make the building two stories high, thereby greatly increasing the cost and labor. *Held* that the alterations which the original contract authorized were such minor changes as would not greatly effect the contractor's undertaking, and that the surety was discharged by the alterations made. (Page 290.)

2. SURETY—DISCHARGE—ESTOPPEL.—Where the surety of a building contractor sued the owner of the building for materials furnished in its erection, and the owner filed a counterclaim, asking for judgment against the contractor and surety for the penalty named in the contract for delay in completing the building, the surety was not estopped from setting up that he had been discharged by a material and unauthorized alteration in the contract by the fact that the materials were furnished by the surety after knowledge of such alteration. (Page 291.)

Appeal from Sebastian County, Ft. Smith District.

EDGAR E. BRYANT, Judge.

STATEMENT BY THE COURT.

The Fort Smith Ice & Cold Storage Company, desiring to have a building erected for cold storage and other purposes, contracted with one Wickshire for the erection of the same. The building was to be one story high, and constructed of brick. Wickshire was to furnish all material except the brick, and was to receive the sum of $7,875 for constructing same. He agreed to finish the building on or before the 14th day of October, 1895, and that, if he failed to complete the building at that time, he would pay the owner, by way of liquidated damages, the sum of $25 for each day thereafter the building remained incomplete. The contract also contained the following provisions: "It is further agreed that the said party of the second part may make any alterations, deviations, additions or omissions from the aforesaid plans, specifications and drawings, or either of them, which they shall deem proper, and the said architect shall advise, without affecting or making void this contract; and in all such cases the architect shall value or appraise such alterations and add to or deduct from the amount heretofore agreed to be paid to the said party of the first part the excess or deficiency occasioned by such alterations." Wickshire gave bond for the performance of his contract, with the Miller-Jones Furniture Company as surety. He afterwards, about the 1st of October, 1895, made a supplemental contract with the Cold Storage Company, by which he agreed to make the building two stories high instead of one, and was to receive an additional consideration of $1,175. The Furniture Company, surety on the bond for first contract, was told by Wickshire on the 1st of October, 1895, that he and the Cold Storage

Company had agreed to make the building one story higher, and on that day the Furniture Company, at request of Wickshire, ordered material to be used in the construction of said second story. The price of material furnished Wickshire by the Furniture Company, and used in the construction of said building, amounted in all to $3,260.86, of which Wickshire paid $2,000, leaving a balance of $1,260.86 due the Furniture Company. The Furniture Company filed its lien for said sum against the building of the Cold Storage Company, and afterwards brought this action against Wickshire and said Cold Storage Company to enforce said lien and recover said debt. The Cold Storage Company filed an answer and counter-claim, asking judgment against Wickshire and the plaintiff as surety for delay in completing the building.

The circuit judge, sitting as a jury, found that Wickshire was indebted to the plaintiff Furniture Company in the sum of $1,260.86 for materials furnished; that the defendant Cold Storage Company was entitled to $600 damages against Wickshire and plaintiff as surety on his bond for delay in completing the cold storage rooms, and further that plaintiff was entitled to a judgment against Wickshire for $1,260.86, and to a lien on building for $660.86, balance of debt after deducting damages allowed on counterclaim,—and gave judgment accordingly.

*H. C. Mechem* and *F. A. Youmans,* for appellant.

Any change in the contract releases the surety. 9 Wheat. 702; 23 Mo. 244; 11 N. E. 232; 137 N. Y. 307; 31 N. W. 862; 36 Atl. 400. The burden was on appellee to show, not mere knowledge, but actual consent of the surety to the change. 27 N. Y. S. 1097; 55 Ga. 656; 4 Pa. St. 348; 19 Pa. St. 119; 6 Mon. (Ky.) 567; 12 Ga. 271. The act of the surety in subsequently furnishing material for the addition called for in the altered contract was not a waiver of its discharge. The changes provided for in the substituted contract were not such as the owner was authorized to make under the stipulation for changes in the old contract. 46 N. W. 1020; 52 N. W. 1106; 63 N. W. 17; 7 Mo. App. 283. Appellant is entitled to a lien for materials under the second contract. 49 Cal. 131.

*Hill & Brizzolara,* for appellee.

When a contract provides in advance for changes, the surety is not released by the making of such changes. 42 N. E. 669; 52 N. W. 165; 7 Mo. App. 283; 48 Kas. 756; 46 N. W. 1018; 8 So. 509. Since the surety is not placed in any different position, he is not discharged. 20 Wall. 165. The appellant is not estopped to plead its discharge, because of its subsequent acts and silence. 50 Ark. 458; 11 Ark. 249; 33 Ark. 465.

Riddick, J., (after stating the facts.)   The only question presented by this appeal is whether the Miller-Jones Furniture Company, surety on the bond of Wickshire for the performance of his contract to erect a building for the Fort Smith Ice & Cold Storage Company, was discharged by the subsequent alteration of the contract.   The Cold Storage Company contends that the supplemental contract did not discharge the surety, for the reason that such supplemental contract was within the scope of the first contract, and was therefore assented to by the Furniture Company at the time it signed the bond.   This contention of the Cold Storage Company is based on a provision in the original contract permitting the owner to make alterations in the plans and specifications of the building.   But we are of the opinion that the parties did not intend by this provision to authorize changes so extensive as the one complained of here. The provision referred to, which is set out in the statement of facts, permits such alterations to be made, even without the consent of the contractor, and provides that the architect shall determine the amount to be paid or deducted therefor.   We cannot suppose that the parties intended by this provision to permit the owner to make great and extensive changes in the plan of the building, and to force the contractor to complete it in conformity therewith, at such compensation as might be allowed by the architect.   The fact that these alterations in the plan could be made without the consent of the contractor forces us to the conclusion that the alterations referred to were such minor changes as owners often wish to make in the plan of buildings while they are under construction, and which do not greatly affect the undertakings of the contractor.   *Dorsey* v.

*McGee*, (Neb.) 46 N. W. 1018; *Consaul* v. *Sheldon*, (Neb.) 52 N. W. 1104.

But the supplemental contract in this case called for very extensive changes. It called for a larger building at an increased price. The surety undertook that the contractor should, on or before the 14th day of October, 1895, construct and finish a one-story building in which there were to be cold storage rooms. The owner afterwards, without the consent of the surety, released the contractor from his obligation to complete the building within the time required, and agreed with him that, instead of the one-story building for the completion of which the surety was bound, he should, for an additional consideration of $1,175, erect a two-story building, in the first story of which cold storage rooms were to be constructed and finished on the 14th day of October, 1895. It was specially agreed that the change in the contract by adding another story to the building should not affect the completion of the cold storage rooms, and the Cold Storage Company now asks damages because these cold storage rooms were not completed within the time named. But, after the contract was changed so as to call for a two-story building, the obligation to complete the storage rooms within the time named rested on the second contract, to which the surety was not a party. The first contract being abrogated by the second, the surety could not be held liable for the performance or non-performance of any part of the second contract. *O'Neal* v. *Kelley*, 65 Ark. 550.

We are also of the opinion that the fact that the Furniture Company knew of the alterations in the contract, that it subsequently furnished material to Wickshire to complete the building as altered, and that the largest portion of its account against Wickshire is for material furnished after such alteration, does not estop it from setting up such alteration as a defense againts the counterlaim of the Cold Storage Company.

"Equitable estoppel," says Prof. Pomeroy, "is the effect of the voluntary conduct of a party, whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby

to change his position for the worse, and who on his part acquired some corresponding right, either of property, of contract, or of remedy." 2 Pom. Equity Jur. (2 Ed.) § 804. Now, in this case, the Furniture Company did nothing that in any way misled the Cold Storage Company, or that caused it to change its position in any respect, and the doctrine of estoppel does not apply. As the Furniture Company did not consent to such alteration of the contract, nor do anything to estop it from setting up the same as a defense, we are of the opinion that its contention on that point must be sustained, and we must hold that it was thereby discharged from liability as surety on the bond of Wickshire. We are therefore of opinion that the judgment of the court as to damages on the counterclaim was erroneous. In other respects it was right; but for the error mentioned the judgment is reversed, and the cause remanded, with an order to enter judgment in accordance with this opinion.