ERFURTH *v.* STEVENSON.

Opinion delivered January 31, 1903.

1.  PRINCIPAL AND SURETY—ALTERATION.—Contractors agreed with the owner of land to erect thereon a brick building with shingle roof, and gave bond with sureties. The contract stipulated that the owner, "through his architect, may require alterations to be made in the construction, arrangement, or finish of the work from that herein, and in said specifications, plans or drawings expressed." Subsequently the owner and the contractors, without the consent of the sureties, agreed to substitute slate for shingles, thereby increasing the cost eleven per cent. *Held,* that such a material alteration was not contemplated in the contract, and that it discharged the sureties from liability. (Page 202.)

2.  SAME—ESTOPPEL.—Sureties on a contractor's bond are not estopped from taking advantage of a material alteration in the contract, because they indorsed their approval upon orders drawn by the contractors on the owner where the object of such approval was merely to relieve the owner from his contract to withhold from the contractors 25 per cent. of the contract price until such contractors completely performed their part of the original contract. (Page 205.)

Appeal from Sebastian Circuit Court, Fort Smith District.

STYLES T. ROWE, Judge.

Reversed.

*Read & McDonough,* for appellant.

The change in the contract released the surety. 61 S. W. 369; 65 Ark. 550; 66 Ark. 289; 22 S. W. 622; 24 Minn. 387; 59 Barb. 319. An alteration which changes the legal effect of the instrument is material, and discharges the sureties. 76 Va. 537; 29 Am.

& Eng. Enc. Law 965, 977; 28 S. W. 439; 73 N. W. 524; 99 Fed. 299; 59 Mo. App. 44; 40 Mo. App. 213; 55 Mo. App. 427; 116 Mo. 179.

*Hill & Brizzolara,* for appellee.

The change was not one which materially effected the contract. 66 Ark. 287; *Cf.* 61 S. W. 369; 65 Ark. 550; 116 Mo. 179; *s. c.* 22 S. W. 622; 73 N. W. 524; 46 Pac. 402. The change was within the purview of appellant's contract, and did not release them as sureties. 52 N. W. 1104; 42 N. E. 669; 63 N. W. 17; 7 Mo. App. 283.

BATTLE, J. On the 4th day of April, 1898, Erfurth & Seibert entered into a written contract with E. H. Stevenson, by which they agreed to erect and construct for him a two-story brick residence, with a stone foundation and roof covered with Oregon cedar shingles "except foundation, cut stone, brick work, plastering, painting, plumbing and trimming hardware" in a good and substantial and workmanlike manner; and Stevenson agreed to pay them therefor the sum of $2,670; and it was agreeed that no sum exceeding seventy-five per cent. of the value of work done and materials furnished and used should at any time be paid to them before they fully complied with and performed their contract. A provision for alterations in the building was made in the contract as follows:

"Article 13. That the party of the first part, through his architect, may require alterations to be made in the construction, arrangement or finish of the work from that herein, and in said specifications, plans or drawings, expressed, without annulling or invalidating this agreement in any particular, and in case of any such alterations the increase or diminution of expense occasioned thereby shall be added to or taken from the contract price of the entire work; and that a description of the changes so to be made, together with the expense of making the same, shall be attached to this agreement before said changes are executed, or otherwise shall not be binding on said first party. And it is further agreed that, in case the parties hereto cannot agree as to the amount to be added to or deducted from the said contract price on account of the contemplated change, then and in such case the party of the first part shall have the right under this contract to have other than the

second party (Erfurth & Seibert) execute such changes during the progress of the building and work aforesaid."

On the 4th of April, 1898, the same day on which the contract was executed, Erfurth & Seibert, as principals, and John Schaap and S. A. Williams, as sureties, executed a bond to E. H. Stevenson, and thereby bound themselves to him in the sum of $2,670; conditioned that, if Erfurth & Seibert should perform their contract with Stevenson, the same should be void.

On the 7th day of May, 1898, Stevenson and Erfurth & Seibert agreed in writing as to certain changes in the said building, as follows:

"May 7, 1898. It is hereby agreed that all roofs and gables shall be covered with 7 x 14 best quality black Bangor slate, with all hips connected and made tight (instead of being covered with Oregon cedar shingles as set out in the specifications). All slate shall be laid on heavy tar felt, and all sheathing shall be No. 1 com. M. D. with all defects cut out, thoroughly seasoned, close joint and double nailed at each heaving with 10d wire nails. All tin, galvanized iron and zinc work (conductor supports coppered) shall be made of 102 z copper instead of tin, galvanized iron and zinc as specified in specifications (except floor of balcony, which shall be of tin as specified) and all work and materials subject to the approval of the architect.

(Seal.)          "E. H. Stevenson, Party First Part.
(Seal.)          "Erfurth & Seibert, Party Second Part."

On the 9th day of September, 1899, Stevenson commenced this action against Erfurth & Seibert, Schapp and Williams, on their bond; and Schaap and Williams answered, and stated that they were sureties on the bond, and had been released from their obligations by the changes made in the original contract without their consent.

In the trial that followed it was proved that the changes in the contract were made without the consent of the sureties, and there was no evidence to the contrary, unless the original contract was evidence of such consent; and that they (the changes) were not within the contemplation of the parties at the time the original contract was entered into is shown by the testimony of Goddard, the architect who drew the plans and specifications for the building, and superintended the erection of the same. He testified as follows: "At the time we were receiving estimates on Dr. Stevenson's house

for the construction of it, it was contemplated to use slate for the roof, but, owing to the fact that we knew, of course, it would cost some more to use slate,   *   *   *   Dr. Stevenson decided that we would make the specifications to read shingles, raised tin and galvanized iron; and asked some of the contractors—in fact all of them—to submit the amount extra it would cost to use slate and copper instead of shingles, tin and galvanized iron for the roof. Some of them did so, and some of them did not."

It was proved that Erfurth & Seibert drew orders on Stevenson the 9th and 10th days of February, 1899, for the amounts due for work done and materials furnished to complete the building according to the alterations made in the original contract, and that Schaap and Williams indorsed their approval upon the same. Goddard, the architect, testified that their approval was required because Stevenson had paid Erfurth & Seibert more than seventy-five per cent. of the value of the work done and materials furnished at the time the orders were drawn; and the sureties testified that they indorsed their approval because they were informed that Stevenson would not pay the orders without it.

Plaintiff recovered judgment, and the defendants appealed.

Were John Schaap and S. A. Williams, sureties on the bond of Erfurth for the performance of their contract to erect a building for E. H. Stevenson, discharged by the alteration of the contract?

In *O'Neal* v. *Kelley,* 65 Ark., 550, this court held that any material alteration in the contract for the performance of which a surety is bound, without his consent, discharges the surety, and that "this is so, even if the alteration be for the benefit of the surety; for, although the principals may change their contract to suit their pleasure or convenience, they cannot thus bind the surety."

In *Miller-Jones Furniture Co.* v. *Fort Smith Ice & Cold Storage Co.,* 66 Ark. 287, one Wickshire contracted with the appellee to build for it a one-story brick house, and to complete the same on or before the 14th day of October, 1895. The contract contained the following stipulation: "It is further agreed that the said party of the second part may make any alterations, deviations, additions or omissions from the aforesaid plans, specifications and drawings, or either of them, which they shall deem proper, and the said architect shall advise, without affecting or making void this contract; and in all such cases the architect shall value or appraise such

alterations and add to or deduct from the amount heretofore agreed to be paid to the said party of the first part the excess or deficiency occasioned by such alterations." "Wickshire gave bond for the performance of his contract, with the Miller-Jones Furniture Company as surety. He afterwards, about the 1st of October, 1895, made a supplemental contract with the Cold Storage Company, by which he agreed to make the building two stories high, instead of one, and was to receive an additional consideration of $1,175." This court held that the surety was discharged by the alterations made. Mr. Justice Riddick, in delivering the opinion of the court, said: "The Cold Storage Company contends that the supplemental contract did not discharge the surety, for the reason that such supplemental contract was within the scope of the first contract, and was therefore assented to by the Furniture Company at the time it signed the bond. This contention of the Cold Storage Company is based on a provision in the original contract permitting the owner to make alterations in the plans and specifications of the building. But we are of the opinion that the parties did not intend by this provision to authorize changes so extensive as the one complained of here. The provision referred to, which is set out in the statement of facts, permits such alterations to be made, even without the consent of the contractor, and provides that the architect shall determine the amount to be paid or deducted therefor. We cannot suppose that the parties intended by this provision to permit the owner to make great and extensive changes in the plan of the building, and to force the contractor to complete it in conformity therewith, at such compensation as might be allowed by the architect. The fact that these alterations in the plan could be made without the consent of the contractor forces us to the conclusion that the alterations referred to were such minor changes as owners often wish to make in the plan of buildings while they are under construction, and which do not greatly affect the undertakings of the contractor."

In *Consaul* v. *Sheldon* (Neb.), 52 N. W. 1104, 1107, cited by the court in *Miller-Jones Furniture Company* v. *Fort Smith Ice & Cold Storage Company,* it is said: "A number of changes and alterations were made in the buildings, which increased the cost thereof, after the letting of the contract and the signing of the bond. But such changes and alterations did not have the effect to release and discharge the sureties, for the reason the contracts ex-

pressly provided that the owner might make alterations in the plans of the building, and that the making of the same should not release the sureties. Each contract contained this stipulation: 'Should the proprietor, at any time during the progress of the work, require any alterations of, deviations from, or additions in the said contract, specifications, or plans, he shall have the right and power to make such change or changes, and the same shall in no way injuriously affect or make void the contract.' This provision was ample authority for all changes and alterations which were made in the buildings. We must not be understood as claiming that the owner had the right to make such changes as he saw proper, regardless of cost and the character and extent of such alterations. The changes and additions must be reasonable, and not materially increase the costs of the buildings beyond the original contract price."

In the contract before us Stevenson, for whom the building was to be erected, was vested with the power to require alterations to be made in the construction of the building and in the arrangement or finish of the work, as specified in the contract and specifications, plans and drawings referred to therein. He could do so without the consent of the contractors, Erfurth & Seibert. But they were not compelled to do the additional work, or furnish the materials made necessary by the alterations. If they refused to do so, or failed to agree with Stevenson as to price, the contract provided that Stevenson might employ other parties to do such work and furnish the materials. But nevertheless, as said in *Miller-Jones Furniture Co.* v. *Fort Smith Ice & Cold Storage Co.,* "the fact that these alterations * * * could be made without the consent of the contractors forces us to the conclusion that the alterations referred to were such minor changes as owners often wish to make in the plan of buildings while they are under construction, and which do not greatly affect the undertakings of the contractor." Any other construction of the contract would place the contractors in the position of agreeing that alterations might be made in their contract which would be materially injurious to them, which would be unnatural and unreasonable.

The right to make the alterations that were made in the contract depends upon the following clause: "The party of the first part [Stevenson], through his architect, may require alterations to be made in the construction, arrangement or finish of the work

from that herein, and in said specifications, plans or drawings, expressed." The alterations made were not in the arrangement or finish of the work, as they consisted entirely of a change of materials. Were they made in the construction? In the construction of what? A two-story brick residence, with stone basement, and with roof covered with Oregon cedar shingles. Did Stevenson have the right to so alter the contract as to substitute a residence of granite for the brick residence? Certainly not. Why then could he substitute a slate for a shingle roof? Such a change would not be in the construction of a shingle roof, which the contractors agreed to make, but a substitute for it, which was not authorized by the contract. The evidence shows that such was not the intention of the contract. Stevenson, the party of the first part, had under consideration, before entering into the contract with Erfurth & Seibert, the building of the residence with a slate roof, but abandoned it because it was too expensive, and decided to use Oregon cedar shingles instead of slate.

The price which the contractors, Erfurth & Seibert, were to receive for the building under their contract with Stevenson, before it was altered, was $2,670, and the alterations were worth and cost at least $320, which increased the cost more than eleven per cent. The change made in the building by the amended contract materially increased the cost of it beyond the original contract price, and, if binding on the sureties on the contractor's bond, increased their liability to the same extent. But the change was unauthorized by the original contract, and was made without the consent of the sureties, and discharged them from liability on their bond.

But appellee insists that, if the sureties on the contractor's bond were relieved from their obligation by the alteration in the original contract, they are estopped from taking advantage of it by the indorsement of their approval upon the orders drawn by Erfurth & Seibert on Stevenson for the amount due for labor performed and materials furnished according to such alterations. They disavowed any intention to approve the alteration of the contract by the approval of the orders, but contend that the object of their approval was to relieve Stevenson from his contract to withhold from the contractors twenty-five per cent. of the contract price until they fully and completely performed their part of the original contract.

The alterations in the original contract were made, without the consent of the sureties, on the 7th of May, 1898, and released

them from their obligation. Their approval of the orders was indorsed thereafter on the 9th or 10th of February, 1899, and therefore could not have induced Stevenson to change his position in respect to his liability for the amounts paid by him on the orders of Erfurth & Seibert. He was already bound to pay for the work done and materials furnished according to the contract as altered. His position in that respect could not have been changed by the approval of the orders of Erfurth & Seibert by the sureties; and they are not thereby estopped from setting up their discharge from liability to Stevenson as such. *Miller-Jones Furniture Co.* v. *Forl Smith Ice & Cold Storage Co.*, 66 Ark. 287.

The judgment of the court below against the sureties is reversed, and as to Erfurth & Seibert it is affirmed. Judgment upon the merits will be rendered here against the appellee in favor of the sureties.