C. O. LAMSON et al., Appellants, v. MARYLAND CASUALTY COMPANY, Appellee.

**PRINCIPAL AND SURETY:** Release of Surety—Unauthorized Change.
A surety on a building contract is wholly released by the act of the owner and contractor in adding an entire new and additional story to the building, without the knowledge or consent of the surety, even though the contract does authorize the owner, during the progress of the work, to make *"any addition"* to the plans and specifications.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

· JUNE 22, 1923.

REHEARING DENIED DECEMBER 14, 1923.

THIS is an action on a surety contractor's bond to recover the excess cost of a building which, on account of the contractor's default, the owner was compelled to complete. A jury was waived, and the issues submitted to the court upon an agreed statement of facts. Judgment was entered by the court, dismissing plaintiffs' petition, and against them for costs. Plaintiffs appeal.—*Affirmed.*

*Clark & Clark* and *Mears & Lovejoy,* for appellants.

*Edwards, Longley, Ransier & Harris* and *C. H. E. Boardman,* for appellee.

STEVENS, J.—On or about the 26th day of April, 1913, appellants, plaintiffs in the court below, entered into a written contract with the Dunphy-Fridstein Company, a Wisconsin corporation engaged in the business of erecting large buildings, for the construction of a "seven-story and basement reinforced concrete and masonry constructed fireproof hotel building (of construction sufficiently strong for two additional stories), to be known as Hotel Russell-Lamson, to be erected * * * in conformity with the drawings and specifications and addenda thereto made by Marshall & Fox, architects (which drawings consisting of plans, sections, details and elevations and specifications, are signed by the parties hereto, and are hereby made a part of this agreement), * * *"

The contractor agreed to furnish all material and labor and to complete the building for a consideration of $265,000, payable upon certificates signed by architects. Appellee surety company entered into an undertaking guaranteeing performance of the contract as follows:

"In consideration of the sum of one ($1.00) dollar, the receipt of which is hereby acknowledged, do hereby bind ourselves, our and each of our heirs, executors, administrators and assigns, and guarantee the faithful performance of the contractor's duties in every particular under this agreement. Our

liability under this guarantee to be limited to two hundred thousand ($200,000) dollars.''

On October 3, 1913, an additional agreement was entered into by appellants and the contractor, which was prepared by the architects and designated as a ''construction order.'' It is in the form of a letter addressed to the contractor, the approval and agreement of the parties being indorsed thereon: By this contract the builder agreed to erect and complete an eighth, or additional, story to the building, at cost plus 10 per cent, guaranteeing that the expense would not exceed $16,000. The contractor abandoned the work in February, 1914, and in April of that year was adjudged a bankrupt, without assets for the payment of creditors. Prompt notice of the default of the contractor was given to the surety, which replied, denying liability, and claiming that, because of certain changes, alterations, and deviations from the contract, it was released. Thereupon, appellants completed the building at an expense in excess of the contract price. This action is for the recovery of such excess.

The appellee set up various defenses in its answer, some of which it will not be necessary to mention. The two propositions urged most strongly in argument are: (a) That the addition of a complete story to the building was such a departure from the original plans and specifications and the contract for the erection of the hotel as to discharge the surety; and (b) that the fair value of the addition was not fixed or agreed upon by the parties, as required by the contract, and that the record does not furnish a basis for ascertaining such value. The particular deviation from the original contract complained of is the erection of an additional or eighth story to the building. The contract authorized alterations or deviations from the drawings and specifications and additions thereto, as follows:

''It is further agreed that said party of the first part may at any time during the progress of said work make any additions to or alterations or deviation from, said drawings and specifications without invalidating this agreement; but a fair value of the same shall be added to or deducted from, as the case may be, the moneys herein agreed to be paid by the said party of the first part, provided that no new work of any description done on the premises, or any work of any kind whatsoever, shall be

considered an extra, or a charge in excess of the amount herein agreed to be paid, unless a proper estimate in writing of the same before its commencement shall have been submitted and agreed to, and signed by said architects and said party of the first part, and provided further, that should any dispute arise respecting the fair value of the work omitted or added by the party of the second part, the same shall be determined by three persons, one chosen by the party of the first part, and one by party of the second part, the two so chosen choosing a third, and a decision of the majority of the three so chosen shall be binding upon the parties hereto.''

The answer of appellant to these contentions on the part of appellee is that the contract authorized the addition of the eighth story to the building, and that the supplemental contract for the erection thereof fixed the fair value of such addition at cost plus 10 per cent, and that it is immaterial that the actual expense incurred by appellant in the construction of said additional story exceeded $16,000. It is stipulated that the cost thereof exceeded $25,000. The law is well settled that, where a surety company, for a consideration, enters into an undertaking to guarantee the faithful performance of a builder's contract which provides that changes, alterations, and additions may be made in the building, the bond is not invalidated by changes or additions made in accordance therewith and in conformity thereto. *Bartlett & Kling v. Illinois Surety Co.*, 142 Iowa 538; *People's Lbr. Co. v. Gillard*, 136 Cal. 55 (68 Pac. 576) ; *National Surety Co. v. Long*, 79 Ark. 523 (96 S. W. 745) ; *United States v. Walsh*, 115 Fed. 697; *McMullen v. United States*, 167 Fed. 460; *American Surety Co. v. Scott & Co.*, 18 Okla. 264 (90 Pac. 7) ; *Dunne Inv. Co. v. Empire State Surety Co.*, 27 Cal. App. 208 (150 Pac. 411) ; *Jersey City Water Sup. Co. v. Metropolitan Const. Co.*, 76 N. J. L. 419 (69 Atl. 1088) ; *American Surety Co. v. Lauber*, 22 Ind. App. 326 (53 N. E. 793). Also, that the contract of a paid surety is construed most favorably to the party for whose benefit it was executed. *Hileman & Gindt v. Faus*, 178 Iowa 644; *Streator Clay Mfg. Co. v. Henning Vineyard Co.*, 176 Iowa 297; *Van Buren County v. American Surety Co.*, 137 Iowa 490; *Brandrup v. Empire St. Sur. Co.*, 111 Minn. 376 (127 N. W. 424).

The difficulty lies in the construction of the contract and in its application to the facts of each case. Many, cases are cited by counsel on both sides, tending to support their respective theories of this case. The court in each of the cases cited by appellant sustained the liability of the surety; whereas a contrary conclusion was reached in the cases relied upon by appellee. A distinction is sought to be drawn by appellant between the language and import of the contract in the case at bar and the cited cases in which it was held that the surety was discharged. The principal difference pointed out by counsel is in the use of the word "additions" in the contract under consideration.

It is urged by appellant that particular emphasis should be given to the word "additions," because of the provision of the contract requiring that the foundation and building be made sufficiently strong to support two additional stories. The question is: What was the intention of the parties to the contract? Did they contemplate that the building, when completed, might consist of eight, instead of seven, stories, as provided in the contract, or was the word "additions" used to cover lesser changes and alterations of the original plan, not reasonably included in the words "alterations or deviation from said drawings and specifications?" Of course, effect must be given to the clause as a whole. Except for the statement of general rules, precedents are not particularly helpful in the decision of the point in controversy. The contracts differ in their terms, and the facts of each case are largely peculiar thereto, but, as illustrative of the application of the general rule in cases in which the surety was held, the following are in point: *Eureka Stone Co. v. First Christian Church,* 86 Ark. 212 (110 S. W. 1042); *Risse v. Hopkins Plan. Mill Co.,* 55 Kan. 518 (40 Pac. 904); *Moreland v. Mitchell County,* 40 Iowa 394; *McMullen v. United States,* supra; *United States v. Walsh,* supra; *National Surety Co. v. Long,* supra; *Massachusetts Bond. & Ins. Co. v. Realty Trust Co.,* 137 Ga. 693 (73 S. E. 1053); *People's Lbr. Co. v. Gillard,* supra. In the following cases, the surety was discharged because of deviations from or alterations in the contract: *Tide Water Oil Co. v. Globe Indem. Co.,* 238 Fed. 157; *Hinton v. Stanton,* 112 Ark. 207 (165 S. W. 299); *Miller-Jones*

*Furn. Co. v. Ft. Smith I. & C. S. Co.*, 66 Ark. 287 (50 S. W. 508); *House v. American Surety Co.*, 21 Tex. Civ. App. 590 (54 S. W. 303); *Sweatt v. Bonne*, 60 Wash. 18 (110 Pac. 617); *Southern Surety Co. v. Nalle & Co.*, (Tex. Civ. App.) 231 S. W. 402; *United States v. Poe*, 138 Md. 466 (114 Atl. 705). In but one of the cases last cited was the word "additions" used in the contract, and it was given no apparent significance by the court in its opinion.

The contract before us was for the construction of a seven-story building, with foundations and a structure sufficiently strong to support two additional stories. So far as disclosed by the record, the subject of an additional story was not considered at the time the contract was entered into, nor does it appear when it did become the subject of negotiation between appellant and the contractor. Perhaps this is immaterial, but it occurs to us that it might throw some light upon the intention of the parties at the time the drawings and specifications were prepared and the contract entered into. Doubtless, appellants contemplated the possibility that one or two stories might sometime be added to the building; but their contract was for the erection of a seven-story hotel building. It is quite evident that the determination to add the eighth story was reached after the contract was executed.

Under the provisions of the contract, the previous express consent of the surety was not necessary to the making of such alterations or deviations in the drawings and specifications or additions thereto as the contract authorized. It had already impliedly given its consent thereto. The question is, What changes or deviations from the original plan of the building or additions thereto are authorized by the contract? It is a matter of common knowledge that changes and alterations of a more or less material character are usually made in the erection of buildings, large and small. Sometimes they increase, and again they may reduce, the cost of the structure. The contract clearly authorized deviations of this nature. It seems to us, however, that the change from a seven to an eight-story building was more substantial than the parties contemplated by their contract. In a number of the cases cited supra, the surety was released because an additional story was added to the building; but, as was said,

in but one of the contracts was the word "additions" used. To hold that the word "additions" in the clause quoted was intended by the parties to include the erection of one or more additional stories at a large expense would be, it seems to us, to give too great significance and effect to the clause of the contract relied upon. If the parties, at the time of the execution of the contract, had in contemplation the possible immediate addition of an eighth story, may we not assume that it would have been made more specific in that respect? The obligation of the surety is as broad as the contract, but does not extend beyond its terms. The surety cannot complain because of changes, deviations, or additions to the plan of the building, so long as they are authorized by the contract. It is a general rule that sureties on a bond to secure the performance of a building contract are discharged by any substantial change or alteration of the plan of the work, unless the right to make such changes or alterations is expressly conferred by the contract or permitted by the bond. *Bartlett & Kling v. Illinois Surety Co.,* supra. The contract under consideration contained a provision to that effect. The difficulty is to determine whether the language authorizing such changes and alterations is broad enough to include the addition of a complete story to the seven-story building covered by the original contract. We are unable, however, to bring ourselves to the conclusion that the addition of a complete story to the building, the fair value of which, according to the agreement of the parties, was approximately $16,000, was not a more substantial addition than was contemplated by the contract.

In view of our conclusion on this point, it is unnecessary to consider other matters argued by counsel. The judgment of the court below is, accordingly,—*Affirmed.*

PRESTON, C. J., EVANS, ARTHUR, and FAVILLE, JJ., concur.