## MARYLAND CASUALTY CO. v. CITY OF SOUTH NORFOLK et al.

### No. 3239.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

J. W. Eggleston and Braden Vandeventer, both of Norfolk, Va. (Vandeventer, Eggleston & Black, of Norfolk, Va., and George W. Dexter, of Baltimore, Md., on the brief), for appellant.

Tazewell Taylor, Jr., and E. A. Bilisoly, both of Norfolk, Va. (Roland Thorp and James G. Martin, both of Norfolk, Va., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is the second appeal in a suit instituted in the court below to determine the liability of a surety under a contractor's bond. Hudson & Scruggs, Inc., was the contractor, the city of South Norfolk, Va., was the obligee, and the Maryland Casualty Company was the surety. We shall refer to them hereafter as "the contractor," "the city," and "the surety," respectively. The judge below referred the cause to a special master, who filed a report determining the amounts of the claims asserted by various materialmen under the bond. He reported that two general questions affecting the rights of all claimants were whether the surety was liable under the bond to subcontractors for labor and materials furnished, and whether, if liable thereunder, the liability extended to labor and materials furnished for work done under a supplemental contract claimed to be a mere extension of the original contract. He was of opinion that, if liability existed, it extended to labor and materials furnished under the supplemental,

as well as under the original, contract, but that there was no liability under the bond with respect to either.

The case was heard by the District Judge upon exceptions to the report of the special master, and he held that there was no liability under the bond for materials furnished the contractor, and entered a decree in favor of the surety on that ground. The materialmen thereupon appealed to this court; and we reversed the decree below, holding that the bond was intended to protect, and did protect, laborers and materialmen. This was the only question decided on the former appeal. Daughtry et al. v. Maryland Casualty Co. (C. C. A. 4th) 48 F.(2d) 786.

Upon the receipt of the mandate from this court, the court below proceeded to pass upon and allow the claims of the defendants and interveners, and allowed the claims of those who had furnished materials to the contractor for the completion of the supplemental, as well as for the completion of the original, contract. From a decree in favor of these materialmen, the surety has appealed; and the principal question presented by its assignments of error is with respect to its liability for materials furnished the contractor under the supplemental contract. We shall come at once, therefore, to the consideration of that question.

The contract between the contractor and the city was entered into on October 22, 1928; and bond in the sum of $75,000 guaranteeing its performance and the payment of laborers and materialmen was executed by the surety at the same time. The contract was based on a proposal to do paving work at certain unit prices, and bound the contractor to do the work and furnish the materials necessary to construct and complete ready for use the street improvements of the city of South Norfolk in accordance with the specifications attached, the drawings, instructions to bidders, the proposal, and such detail directions, drawings, etc., as might be given by the engineer from time to time during the construction. It was understood and agreed between the contractor and the city that the amount to be expended for paving at the unit prices was approximately $150,000, and this fact was communicated to the surety. The amount of the bond was fixed at $75,000, because this was 50 per cent. of the estimated contract price; and a premium of $1,500 was collected from the contractor, same being 1 per cent. of that price. While the streets to be paved were not designated at the time the contract was executed, it was understood in a general way where the work contracted for was to be done; and within two or three weeks thereafter the city engineer determined upon a list of the streets which were to be paved under the contract "with question marks on two or three streets," and notified the contractor of his determination. Following this, there were only minor changes in the work as determined, "cutting off a block here and a block there, and adding one here," to use the language of the engineer.

The contract provided that work should be commenced not later than November 1, 1928, and completed not later than April 1, 1929, with provision for extension of time in case of interruption of work or delivery of materials by the council of the city, or in case the council in its discretion should agree to extend the time. Work was duly commenced as provided in the contract, and was continued until, on April 1, 1929, it was practically completed. Of the work laid out for the contemplated expenditure of the $150,000 under the contract, that which remained uncompleted amounted to less than $6,000.

On April 3, 1929, two days after the time for the completion of the work under the original contract, the council of the city, without in terms extending that time, passed a resolution directing the city engineer to instruct the contractor to proceed with the paving of thirteen additional streets at the unit prices prevailing under the original contract and at an estimated total cost of $42,-551. On April 9th the city engineer directed the contractor to pave these streets, stating that the work would be executed as "an extension" of the contract then in force between the contractor and the city. On April 10th, in a letter to the city engineer, the contractor accepted the additional work, and agreed to proceed with its construction. No additional bond was given by the contractor, however, and none was required by the city. No notice was given the surety of the additional contract, and nothing was said by any one to indicate that the bond executed by it to guarantee the performance of the original contract was expected to cover this supplemental contract or "extension." On the contrary, one of the officers of the contractor stated to the agent of the surety, some time afterwards, that he was doing some additional work for the city which was not a part of the contract and on which he did not propose to pay a premium.

The contention of the appellees is that the agreement for the additional paving was not a supplemental or additional contract, but

merely an agreement for additional work provided for under article 8 of the existing contract, and that same is protected by the bond securing the performance of that contract just as is the work originally contemplated. Article 8 of the contract is as follows:

"The council, through the engineer, shall have the right to make any alterations in the plans and quantity of the work or materials herein contemplated, and it is expressly agreed and understood that such alterations, additions, modifications, or omissions, shall not in any way violate this contract, and the contractor hereby agrees not to claim or bring suit for any damage, whether for loss of profit or otherwise. Whenever, during the progress of the work, any additional work or material, or changes or modifications in the work or materials contracted for, are agreed upon between the said council and the contractor, such additional work or materials, alterations or modifications shall be considered and treated as though originally contracted for, and shall be upon and subject to all terms, conditions, and provisions of the original contract."

With this article should be considered article 10, which provides: "The council may require the contractor to furnish additional materials, and to do additional work not provided in the contract or in the specifications, but which may be found necessary to the proper prosecution and completion of the work embraced in this contract, at prices to be fixed by the prices named in the proposal, or on material and force accounts, with 15 per cent. added for profit. But no work other than that included in the contract shall be done, and no additional material shall be furnished by the contractor without a written order from the engineer. In the absence of such written order from the engineer, the contractor shall not be entitled to payment for such additional work. Bills for extra work shall be filed with the council within ten (10) days after work is completed."

The contention of appellees is in reality twofold. They contend, in the first place, that no definite work was specified in the contract as originally executed, this matter being left to specification by the city engineer, that the specification in his letter of April 9th is as much a specification under the original contract as any of his prior specifications of work to be done, and that the obligation of the contractor to perform same is protected by the bond of the surety in the same way.

They contend, in the second place, that, even if the work to be done be regarded as agreed upon at the time of the execution of the original contract, article 8 authorizes additions to the work of the character here involved, and that, when such additions are agreed upon, they are protected by the bond which guarantees the performance of the contract. We do not think that either of these contentions can be sustained.

As to the first, it is true that the written contract does not specify the streets to be paved and that the bids and specifications to which it refers contain mere approximate quantities of work to be done and provide for mere unit prices. We do not think, however, that the whole matter was left as vague as the argument of counsel indicates. If it were, the question would properly arise whether the contract were not void for indefiniteness; for a contract to be valid and enforceable by the courts must obligate the contracting parties to matters definitely ascertained or ascertainable. What we have is a contract partly written and partly oral. The written part fixes the prices to be paid and the details of the work to be done. The oral part fixes the amount of the work. There can be no question but that it was definitely agreed between the city and the contractor that the amount of work to be done was work which under the unit prices set forth in the written bid or proposal would cost approximately $150,000; and it is also beyond question that this part of the agreement was just as binding upon the parties as that part which was reduced to writing and signed by them.

And, even if the agreement as to the cost of the work be ignored, and we look only to the provision of the written contract that the work be done in accordance with the directions, drawings, etc., given by the engineer, the work to be done under the contract had been fixed by directions and drawings so given prior to the date of its expiration. It certainly could not have been contemplated that the engineer might obligate the contractor to perform, or the surety to guarantee performance, by designations given after that time. The agreement between the contractor and the city, entered into after the date fixed for the completion of the original contract, and after the work specified thereunder has been practically completed, providing for work to be done on different streets and at a cost equalling a large percentage of the cost under the original contract, is clearly a supplemental or additional contract, and is not to be treated as an extension of the original

contract, unless some provision in the original so requires.

■ There is no such requirement in the original contract. Appellees rely upon paragraph 8 quoted above, and argue that, whereas paragraph 10 provides for mere incidental additions necessary to the proper prosecution and completion of the work, paragraph 8 was intended to deal with an entirely different matter, the awarding of additional work by the city council. We think, however, that the two paragraphs relate to different phases of the same matter and are to be construed together; paragraph 8 providing that alterations in the plans and quantity of work shall not be construed as a violation of the contract and that additional work resulting therefrom shall be considered as having been originally contracted for, and paragraph 10 providing that the council may require such additional work, without the consent of the contractor, upon the prices fixed in the contract or upon a cost plus basis. The purpose of both provisions was to allow changes and modifications in the work as it proceeded, such as substituting a different type of construction where desired or making changes of a minor character in the territory to be paved, without having such changes treated as a violation of the existing contract or as the substitution of a new contract in its stead. It is not reasonable to construe them as contemplating that an entirely new and independent project might be brought under the terms and guaranty of the original contract, without notice to the surety.

Such provisions in construction contracts are no new thing in the law. They have frequently been inserted in contracts; and the question as to the liability of the surety for work undertaken by the contractor in addition to that contemplated by the original contract has been considered in a number of cases. The rule established by these is that what such a provision contemplates is changes of a minor character, which do not alter the essential nature of the project covered by the contract, and that it does not bind the surety to the performance of an agreement by the contractor which involves a change so substantial and material as to amount to a departure from the original contract or the undertaking of a new and independent project. The rule is thus well stated in Cleveland Co. v. Moore, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540, as follows: "Despite the rule that a compensated surety's contract is not narrowly construed, a court should so construe a contract as not to work an injustice. Noonan v. Bradley, 9 Wall. 407 [19 L. Ed. 757]. A contract is

supposed to have a subject matter and a provision for changes in plans and location does not authorize radical departures from the work as mapped out in the plans and specifications attached to the contract but only authorizes such incidental changes as might have been fairly regarded as necessary to complete the work according to the general intendment."

In United States v. Freel, 186 U. S. 309, 22 S. Ct. 875, 878, 46 L. Ed. 1177 (affirming [C. C. A.] 99 F. 237, [C. C.] 92 F. 299), the court had before it a contract for the building of a dry dock at the Brooklyn Navy Yard. The contract provided for "changes, alterations, or modifications," and stipulated that these should not in any manner affect the validity of the contract. By supplemental agreements, the dry dock was lengthened from 600 to 670 feet, at an added cost of $45,556, and its location was changed 64 feet farther inland at a cost of $5,063.18. The Circuit Court held that the extension of the dry dock was within the meaning of the alteration clause, but that the change of location was a departure from the original project which released the surety. This was affirmed by the Circuit Court of Appeals of the Second Circuit and by the Supreme Court, both of which, however, refused to decide whether the lengthening of the dry dock did not of itself release the surety. In holding that the change in the location of the dry dock had this effect, the Supreme Court said: "Coming, then, to the question of the effect on the responsibility of the surety of the supplemental agreement of August 17, we agree with the circuit court and the circuit court of appeals in holding that the alterations thereby caused were beyond the terms of the undertaking of the surety, and extinguished his liability. The 7th section had in view such changes as might be found advantageous or necessary in the plans and specifications. But the changes called for by the new agreement had no reference to the original plans and specifications, but changed the location of the dry dock, requiring the contractor to make additional excavations and connections with the water, at an increased expense, and gave an increased time of performance."

A case very much in point is United States F. & G. Co. v. U. S., 54 App. D. C. 342, 298 F. 365, 368, in which it appeared that sand and gravel were furnished for the construction of a stretch of road under a supplemental contract. The original contract provided for the construction of a road and bridge, and provided for changes, alterations, etc. In

holding that the surety was not liable for materials furnished under the supplemental contract, the court said: "We are of the opinion that the surety company was not liable for the sand and gravel furnished for the new and additional stretches of road built as above stated, notwithstanding the reservation by the government of a right to change the contract, plans, and specifications, as a term of the original agreement; for such a provision permits only of changes which are not 'so extensive and material as to amount to a departure from the original contract rather than a permissible modification of its details.' Equitable Surety Co. v. McMillan, 234 U. S. 448, 457, 34 S. Ct. 803, 806, 58 L. Ed. 1394; United States v. Freel (C. C.) 92 F. 299; Id., 99 F. 237, 39 C. C. A. 491; Id., 186 U. S. 309, 22 S. Ct. 875, 46 L. Ed. 1177."

See, also, Tide Water Oil Co. v. Globe Indemnity Co. (C. C. A. 2d) 238 F. 157; National Contracting Co. v. Hudson River Water Power Co., 192 N. Y. 209, 84 N. E. 965; House v. American Surety Co., 21 Tex. Civ. App. 590, 54 S. W. 303; Doyle v. Faust, 187 Mich. 108, 153 N. W. 725, 729; Erfurth v. Stevenson, 71 Ark. 199, 72 S. W. 49; Beers v. Wolf, 116 Mo. 179, 22 S. W. 620; United States v. Poe, 138 Md. 466, 114 A. 705.

■ It is contended that the case at bar is distinguishable from the cases cited, in that paragraph 8 of the contract here under consideration provides for "additional" work or material as well as for changes and modifications; but, under the principle noscitur a sociis, we think that term "additional work" must be construed to mean additional work of the nature of that involved in modifications and changes, and not such as is involved in a large independent project. This interpretation is supported by the fact that the first sentence of the paragraph provides that the council, through the engineer, shall have the right to make alterations in the plans and quantity of the work or materials, and follows this with the provision that "such alterations, additions, modifications and omissions" shall not in any way violate the contract, thus showing that the additions contemplated, as well as the alterations, modifications, and omissions, had reference to the work embraced in the project covered by the contract and not to an entirely independent project. It was evidently intended that the words "additional work" in the succeeding sentence should have the same meaning, and that, to come within the terms of the contract, same must have a reasonable relation to the work embraced in the original project and not amount to a departure therefrom.

In a number of cases construction contracts containing a provision for additional work have been construed; and the term has invariably been held to have the limited meaning indicated above and not to bring under the terms of the original contract what is essentially an independent project. Thus in Lamson v. Maryland Casualty Co., 196 Iowa, 1185, 194 N. W. 70, 72, the contract provided for the erection of a seven-story building according to certain plans, but contained a clause that the owner might make any additions, alterations, or deviations therefrom, and that the value thereof should be added to the contract price. Acting under this clause, the owner directed the addition of an eighth story to the building on a cost plus basis, and the contractor agreed to erect same upon that basis. Contention was made that the provision for "additions" in the alteration clause provided for extra work of this character. The court held, however, that the addition of the eighth story on the building was not within the contemplation of the contract, saying: "The question is: What changes or deviations from the original plan of the building or additions thereto are authorized by the contract? It is a matter of common knowledge that changes and alterations of a more or less material character are usually made in the erection of buildings large and small. Sometimes they increase, and again they may reduce the cost of the structure. The contract clearly authorized deviations of this nature. It seems to us, however, that the change from a seven to an eight-story building was more substantial than the parties contemplated by their contract."

In Miller-Jones Co. v. Fort Smith Ice & Cold Storage Co., 66 Ark. 287, 50 S. W. 508, where a contract contained a similar provision, change was made from a one-story to a two-story building. The court held that the extra work involved in such a change was not such as was contemplated by the contract. And see, also, Consaul v. Sheldon, 35 Neb. 247, 52 N. W. 1104, and Cook County v. Harms, 108 Ill. 151.

■ But, even if the contract be construed as authorizing what was essentially an independent project to be brought under its provisions so as to bind the surety for its construction, such project could not be brought under same by agreement made after the time fixed by the original contract for the performance of the work thereunder had expired.

Certainly some limit to the liability of the surety must have been intended. It is true that the city council was authorized to extend the time for the performance of the work; but this could not have been intended to mean that, after the time limited had expired and the work originally contemplated had been practically completed, the parties, by entering into a supplemental contract for an independent project, could bring it under the guaranty of the original bond. If this were possible, they could pave all of the streets of the city by supplemental contracts made from time to time, prolonging the work over a period of years, and the surety would be helpless. That nothing of the kind was contemplated when the contract and bond were executed is too clear for argument.

Our conclusion, therefore, is that the bond sued on guaranteed the claims for labor and materials furnished under the original contract, but did not cover the claims under the supplemental contract. The making of the supplemental contract, however, did not avoid the bond, for it did not change the terms of the original contract, being merely a new and independent contract for the doing of additional work.

### The Application of the Payment Made by the Contractor to the Berkley Machine Works & Foundry Company.

A point of minor importance presented by the appeal is as to the proper application of a payment of $1,000 made by the contractor to the Berkley Machine Works & Foundry Company. On April 30, 1929, the contractor owed this company an account of $3,636.91. Part of this account was for work and materials furnished on the South Norfolk contract, and was protected by the bond here sued on, and part was for work and materials furnished on other projects not protected by any bond. It does not appear that the $1,000 was derived from the work covered by the South Norfolk contract; and neither the contractor nor the claimant applied the $1,000 payment to any particular item of the account. The oldest items of the account are protected by the bond; and the surety contends that the payment should be applied to extinguish them. The claimant, on the other hand, contends that the application should be made so as to extinguish items for which it has no security.

The rules as to application of payments are well settled. The right to direct the application belongs in the first instance to the debtor. If he fails to exercise the right, the creditor may make the application. If neither makes it, the law will apply the payment, in the interest of the creditor, to the debt which is least secured. If all the debts stand on an equal basis with respect to security or the lack of it, the law will make the application to the oldest debts, on the theory that they will be the soonest barred by limitations. If some are secured and some unsecured, it makes the application to those which are unsecured, even though the secured debts be older. But the security to which reference is here made is security given by the debtor himself, as by pledge, lien, or mortgage. Where the debt is secured merely by the undertaking of a third person as an ordinary surety or guarantor, the law applies the payment to that debt rather than to one which is unsecured. Blackmore v. Granbery, 98 Tenn. 277, 39 S. W. 229; Bridenbecker v. Lowell, 32 Barb. (N. Y.) 23; Pardee v. Markle, 111 Pa. 555, 5 A. 36, 41, 56 Am. Rep. 299; Story's Equity Jurisprudence, § 459c; note, 96 Am. St. Rep. 56.

The rule last stated applies, however, only in the case of the ordinary accommodation surety or guarantor, who has an equity of the highest character. There is no reason to apply it in favor of a compensated surety, particularly one who has obtained a contract of indemnity for its protection, as has the surety here. In the case of such a surety, the rule is that the payment should be applied to the unsecured debt, although not the oldest, on the principle that the creditor's security as to it is the most precarious. A debt guaranteed by a compensated surety stands, we think, in the same category as an ordinary secured debt; for while the creditor does not hold property of the principal debtor as security, he does hold the promise of the third person for which the principal debtor has paid, and this third person has no equity superior to that of the creditor, and there is no reason for not following the ordinary rule of applying the payment in the interest of the creditor. See Wait v. Homestead Building Ass'n, 81 W. Va. 702, 95 S. E. 203, 21 A. L. R. 696, and note; Pope v. Transparent Ice Co., 91 Va. 79, 20 S. E. 940; State v. United States F. & G. Co., 81 Kan. 660, 106 P. 1040, 26 L. R. A. (N. S.) 865.

### Minor Contentions.

The two other contentions of appellant require but brief notice. One is that materialmen who did not appeal from the orig-

inal decree are bound thereby, and that it was error to enter decrees in their behalf, notwithstanding the original decree was reversed on appeal by other defendants. This suit, however, was instituted by the surety to determine its liability under its bond. The first decree was entered in its favor on the sole ground that the bond did not guarantee the claims of materialmen. In this question all materialmen were interested; and a single decree was entered denying the claims of all of them. This decree was reversed on the former appeal; and we think that there can be no question but that this reversal inured to the benefit of all persons interested under the bond, whether they appealed or not; for it reversed the decree which denied their right to recover under the bond. 2 R. C. L. 268, 269; 4 C. J. 1206; Tate v. Goode, 135 Ga. 738, 70 S. E. 571, 33 L. R. A. (N. S.) 310, and note; Walker v. Page, 21 Grat. (Va.) 636.

▮ The other contention is that the former decision of this court holding that the bond covered the claims of materialmen·was erroneous and should be reversed. This, however, is a question which must be raised by petition for rehearing and not by subsequent appeal. Thompson v. Maxwell Land-Grant Co., 168 U. S. 451, 18 S. Ct. 121, 42 L. Ed. 539. The former decision of this court became the law of the case; and, while we have the power on a subsequent appeal to reverse it, we exercise the power only in the most unusual circumstances, as where the Supreme Court of the United States has decided the same matter differently during the interim, or where, in a case involving the interpretation of a state statute or rule of property, the Supreme Court of a state has rendered a decision in direct conflict with our former decision. It is not improper to say, however, that in this case we have no doubt as to the correctness of the former decision.·

For the reasons stated, there was error in so much of the decree below as held that the surety was liable under the bond sued on for materials furnished the contractor for use in the work done under the second contract. In other respects the decree was correct. Same will be affirmed, therefore, except in so far as it allowed the claims for materials furnished under the supplemental contract, as to which it is reversed; and the cause will be remanded to the court below for further proceedings in accordance with this opinion. The costs on this appeal will be divided.

Affirmed in part,

Reversed in part and remanded.